## VALLEY METAL PRODUCTS COMPANY *v.* EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—TRANSFER OF DIVISION OF BUSINESS—PRO RATA TRANSFER OF RATING ACCOUNT.

    Decision of referee, affirmed by appeal board of employment security commission and circuit judge that 40% of total payroll of seller had been transferred to buyer by sale of window division of its business other than in the ordinary course of trade, requiring transfer of like share of seller's rating account under employment security act, *held,* not contrary to the great weight of the evidence (CLS 1956, § 421.22).

2. SAME—PURPOSE OF EMPLOYMENT SECURITY ACT.

    The purpose of the employment security act is to create and maintain a fund so that those unemployed may receive the benefits of the act, and interpretation of the act must be in keeping with such end (CL 1948 and CLS 1956, § 421.1 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 10 *et seq.*
[5, 6] 42 Am Jur, Public Administrative Law §§ 134–140.

3. Same—Transfer of Division of Business—Pro Rata Transfer of Rating Account—Liability for Future Benefits.

Provision of employment security act that a transferred portion of a rating account of the employer who had sold a division of its business to a transferee other than in the ordinary course of trade, should be liable to be charged for all benefit payments based on employment in the business or division thereof transferred is construed as imposing the duty to meet the benefit payments upon the transferee, since an unfavorable experience cannot be translated into increased contributions against the seller as it has disposed of that portion of the business (CLS 1956, § 421.22).

4. Same—Transfer of Division of Business—Pro Rata Transfer of Rating Account.

A transfer of a division of a business from a transferor other than in the ordinary course of trade is interpreted as requiring the transferred portion of the transferor's rating account to be merged in the transferee's prior rating account, hence, transferee is liable for benefit payments subsequently made therefrom (CLS 1956, § 421.22).

5. Constitutional Law—Administrative Due Process—Hearing—Notice.

Administrative due process requires that there be notice and hearing to the party to be deprived of property before the final order becomes effective.

6. Unemployment Compensation—Transfer of Rating Account—Due Process.

Purchaser of window division of transferor's business, other than in the ordinary course of trade who was notified of determination of employment security commission that 40% of transferor's payroll had been transferred to transferee as a result of such transaction, was not thereby denied due process of law, where it availed itself of administrative appeal procedure before final order became effective and had a fair hearing before the referee, appeal board, circuit court, and Supreme Court (CLS 1956, § 421.22).

Appeal from Allegan; Smith (Raymond L.), J. Submitted October 18, 1961. (Docket No. 92, Calendar No. 48,742.) Decided December 28, 1961.

Certiorari by Valley Metal Products Company, a Michigan corporation, against Michigan Employ-

ment Security Commission, its appeal board, and Industrial Machine Tool Co., Inc., a Michigan corporation, to review determination that a transfer of business had been effected and that its rating account was credited and would be chargeable accordingly. Judgment approving determination. Plaintiff appeals. Affirmed.

*Walsh, O'Sullivan, Stommel & Sharp,* for plaintiff.

*Paul L. Adams,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, *Arthur W. Brown,* Assistant Attorney General, for defendant Employment Security Commission.

KAVANAGH, J.   This action requires the construction of certain portions of section 22 of the employment security act, as then last amended by PA 1955, No 281, being CLS 1956, § 421.22 (Stat Ann 1955 Cum Supp § 17.524).* This section of the act deals with a transfer of the assets in whole or in part by one business to another by any means other than in the ordinary course of trade. It also provides for a determination by the commission and the assignment

---

* "Sec. 22. (a) If an employer subject to this act transfers * * * any of the assets of his business by any means otherwise than in the ordinary course of trade, such transfer shall be deemed a 'transfer of business' for the purposes of this section if the commission determines: * * *

"(3) That the transferee has acquired and used the transferor's trade name or good will, or that the transferee has continued or within 12 months after the transfer resumed all or part of the business of the transferor either in the same establishment or elsewhere.

"(b) (1) In the case of transfer of business as defined in subsection (a) of this section, the commission shall assign the transferor's rating account, or a pro rata part thereof to the transferee. * * * The pro rata part of the transferor's rating account to be assigned to the transferee shall be determined on the basis of the percentage relationship * * * of the insured payroll for the 4 completed calendar quarters immediately prior to the date of transfer properly allocable to the transferred portion of the business, to the insured payroll for the same period allocable to the entire business of the transferor immediately prior to the date of the transfer."

of a portion of the transferor's rating account to the transferee and deals with the method of computing and determining the portion of the rating account transferred.

On August 22, 1956, Valley Metal Products Company (hereinafter referred to as "Vampco"), a Michigan corporation, doing business at Plainwell, Michigan, purchased certain assets from Industrial Machine Tool Company (hereinafter called "Industrial"), another Michigan corporation, engaged in manufacturing at its plant in Fenton, Michigan.

On March 20, 1957, the Michigan employment security commission mailed to Vampco its determination that a "transfer of business" within section 22 (a) had taken place. Under that section the commission determined that the assets so acquired accounted for 40% of the total payroll of the seller, Industrial. Accordingly, the rating account balance of the transferor, Industrial, was transferred to Vampco together with a 40% share of the taxable wages allocable to that portion of the business so transferred. The purpose of the determination is to allocate between the transferor and the transferee a proper amount of responsibility for unemployment compensation benefits that might be charged against an employer, so that any benefit payment based on wages earned prior to transfer of the business would be charged to Vampco's Michigan employment security commission new rating account.

Upon receipt of notice of the determination, Vampco's attorneys asked for a redetermination. Review was made and the original determination was affirmed. Notice of the affirmation was mailed to Vampco on April 25, 1957.

Vampco requested a hearing and such hearing was held on June 27, 1957, and concluded on July 15, 1957. The referee found, following testimony, that there had been a transfer of business within section

22 and that the transfer of rating accounts and allocated wages was proper. Vampco appealed. The appeal board affirmed the referee's decision. Certiorari was granted for review of the decision. The circuit judge filed a written opinion affirming the decision of the appeal board.

Vampco appealed to this Court, alleging it was denied due process of law by the commission's original determination. It claims it was entitled to notice and hearing before any determination was made, since the determination was made from data and facts supplied *ex parte* by the seller, Industrial. Vampco alleges that once a determination is made *ex parte,* it is difficult to overturn. The difficulty is said to be so fundamental as to involve a denial of due process.

Vampco's principal charge is that it purchased only certain assets of Industrial's business and not the business itself. It claims that, even if there were such a transfer of business, it could not be responsible for unemployment compensation benefits paid to the ex-employees of Industrial. Such burden is said to lie on the employer who created the unemployment.

The facts as found by the referee are that Industrial had 2 divisions of operation at Fenton, Michigan —one was the manufacture of windows, the other of tools. Vampco did buy all of the window business, excluding receivables and license agreements. Further, Industrial assigned to Vampco its window trademark and agreed not to compete in the window business. Vampco moved all of the window operation from Fenton to its plant at Plainwell and began the manufacture of windows. These facts form the basis of the referee's finding that there had been a transfer of business to Vampco under section 22. These facts as found are supported in the record by

the testimony of witnesses and by various exhibits, including the sales agreement.\*

---

\* "Sale Agreement

(Excluding machinery inventory and assignments of patents, patent applications and patent licenses)

"Articles of agreement, made and entered into this 22d day of August, 1956 by and between Industrial Machine Tool Co., Inc., a Michigan corporation with its principal office at Fenton, Michigan, hereinafter called 'Industrial', and Valley Metal Products Company, a Michigan corporation with its principal office at Plainwell, Michigan, hereinafter called 'Vampco', Witnesseth:

"Whereas Industrial is engaged in the manufacture and sale of aluminum windows, and is the owner of certain machinery, equipment, patents, and inventory hereinafter more particularly described, used in said manufacture and sale of such aluminum windows and,

"Whereas Industrial desires to sell and Vampco desires to buy all of the assets of Industrial's window division so-called, excluding only its receivables and license agreements involving patent numbers 2,383,912 and 2,478,044 upon the terms and conditions hereinafter set forth.

"Now, therefore, it is agreed as follows:

"1. For and in consideration of the sum of $81,190.11, the receipt whereof is hereby acknowledged, and the further agreement of Vampco to pay for inventory under paragraph 3 hereof when the amount of such payment is established in accordance therewith, Industrial has bargained and sold and by these presents does grant and convey to Vampco, its successors and assigns all of the assets of its window division so-called, excluding receivables and license agreements above specified and including (but not by way of limitation) the following:

"(a) All of the machinery, equipment, furniture, fixtures, dies, tools and other assets as set forth in schedule 'A' attached hereto.

"(b) All patents, applications for patent, inventions, trade-marks and trade names pertaining to said window division, including the items in schedule 'B' hereto attached, but excluding license agreements involving patent No. 2,383,912 and patent No. 2,478,044 covered by option provisions in paragraph 2 hereof.

"(c) All work in process, finished goods and inventory of raw materials pertaining to said window division, as inventoried and appraised by the parties, including those listed in schedule 'C' attached hereto.

"(d) All materials, books and records applicable solely to Industrial's window division including but not by way of limitation, all blueprints, operation cards, cost information, records and lists of suppliers of materials, together with records of purchase prices, specifications and other data pertaining to supplies, also lists of customers and agents, advertising materials, and the right of access to any and all of Industrial's books and records pertaining to its window division. Industrial, however, shall retain all general corporate records and records of its other divisions.

"To have and to hold the same unto Vampco, its successors and assigns, forever, and Industrial, for itself, its successors and assigns, does hereby covenant with Vampco, its successors and assigns, to warrant and defend the sale of said property, goods and chattels hereby made unto Vampco.

A reading of the testimonial record and the exhibits leads us to the conclusion that the decision reached by the referee with reference to the fact sit-

---

"2. Industrial hereby agrees, upon request of Vampco, provided such request shall be made in writing to Industrial on or before January 1, 1957, to transfer by assignment all of its right, title and interest of, in and to all license agreements and supplements thereto to which it is a party involving patent No. 2,383,912 and patent No. 2,478,044. Industrial further agrees, in the event that Vampco requests such transfer by assignment within the time permitted, that it will forthwith upon demand execute, or cause to be executed, by itself, or by its officers, an instrument of transfer in the form of exhibit 'B' hereto and such other and further proper and reasonable instruments of transfer as may be required by Vampco to effectuate the intent and to carry out the purposes and provisions of this agreement.

"2-A. It is understood that if Industrial's rights in the said license expire before January 1, 1956, Industrial shall not be bound hereby except in the event that it defaults in the timely payment of royalties due and owing Belmont and Durant on account of Industrial's further production on the said license.

"3. Work in process, finished goods, and inventory of raw materials on hand at completion of the sale hereunder shall be priced on the basis of generally accepted accounting principles at the lower cost or market, per physical inventory made and agreed upon and attached hereto as schedule 'C'. Industrial shall reimburse Vampco for its cost of replacing work in process or finished goods sold to Vampco hereunder which turn out to be defective.

"4. Vampco agrees to do the following:

"(a) Purchase from Lawrence Warehouse Company, Kales building, Detroit, Michigan, the remaining stock of materials held under the warehouse bond for Industrial's window division at the invoice cost from supplier to said Lawrence Warehouse Company. Industrial agrees to pay all warehouse costs to and including date of closing.

"(b) In consideration of transfer hereby to Vampco of clear title to all assets sold hereunder, Vampco agrees to pay to Industrial the full purchase price thereof as determined in accordance herewith, being ————————————— dollars.

"5. Industrial represents that the items shown in schedules 'A', 'B' and 'C' and the properties described in paragraph 1 (d) above, comprise all of the personal properties of Industrial's window division (excepting receivables and specified patent licenses) and the parties hereto intend and do hereby expressly agree that title to all of such personal property (excepting such receivables and licenses) shall pass to Vampco immediately on execution of this agreement.

"Industrial agrees that Vampco shall have a period of not to exceed 21 days from execution hereof in which to remove the property sold hereunder from Industrial's premises and buildings and that said items of property may remain in place now located, rent-free during said period. Costs of removal of the property sold hereunder shall be borne by Vampco except, in the event it shall be necessary to alter Industrial's buildings in any way in order to effect such removal, such alterations shall be made by Industrial at its expense.

"6. Industrial further represents and warrants the following:

uation, and affirmed by the appeal board and the circuit judge, is not contrary to the great weight of the evidence.

"(a) That it is a duly incorporated and validly existing corporation under the laws of the State of Michigan.

"(b) That at the time of execution of this agreement it has good and marketable title to all property herein provided to be sold, free and clear of all liens, encumbrances and equities; also that the value of the assets of its window division sold hereby constitutes approximately 1/3 and certainly less than 1/2 of the value of its entire assets at date hereof; also that neither its articles of incorporation or bylaws impair or limit the power of its board of directors to make such sale.

"(c) That this agreement has been duly approved and its execution authorized by the board of directors of Industrial and certified copies of the resolution so approving and authorizing have been delivered to Vampco on execution hereof.

"7. Vampco hereby assumes Industrial's unfilled orders accepted or out on quotation and agrees to fill the same and to save and hold Industrial harmless from any and all liability for delayed or defective performance thereof through fault of Vampco. Industrial agrees to reimburse Vampco for any material furnished to Industrial's customers on a no-charge basis.

"8. That, except as provided in paragraph 7 above, Vampco assumes none of Industrial's liabilities of any kind, and Industrial agrees hereby to save and hold Vampco harmless of and from any and all Federal and State tax deficiencies or liens, and undisclosed liabilities of any kind or nature.

"9. That Industrial may purchase from Vampco, at Vampco's cost, any and all windows and accessories necessary to carry out Industrial's obligations under its 1-year warranty to purchasers.

"10. That Industrial will take all action, and execute all documents, necessary or properly requested, to effect the transfer of the assets herein described to Vampco and will bear all expenses incident thereto.

"11. That it will not engage directly or indirectly or invest in any business engaged in the manufacture or sale of aluminum or steel windows, window frames or doors, or extrusions used in the manufacture thereof for a period of 10 years from execution hereof.

"12. Industrial has obtained from Almar Westman, Arnold Westman, and James F. McKinley, Sr., officers and stockholders of Industrial, agreements (a) not to compete and (b) guaranteeing Industrial's performance hereunder.

"13. The parties hereto agree to take such other action and execute such other documents as may be necessary or proper to effectuate the provisions of this agreement.

"In witness whereof, we have hereunto set our hands and seals this ———— day of August, 1956.

　　　　　　"INDUSTRIAL MACHINE TOOL CO., INC.
　　　　　　　"By: ALMAR WESTMAN, President
　　　　　　　　"ARNOLD WESTMAN, Secretary-Treasurer
　　　　　　"VALLEY METAL PRODUCTS COMPANY
　　　　　　　"By: TYLER RIGGIN, Vice-President
　　　　　　　　"W. M. EDMONSON, Secretary-Treasurer"

We are then brought squarely to the point of determining what the legislature intended by the portion of subsection (b)(2) of section 22 reading as follows:

"Such transferred account shall be liable to be charged for all benefit payments based on employment in the business or portion thereof transferred."

Appellant Vampco contends that though intending a pro rata division of the experience rating account and of the wages paid, the legislature did not intend the same disposition of benefit charges; but rather it intended to limit the benefit charges to the dollar amount of the balance transferred.

Although much could be said with respect to who caused the layoffs, Industrial or Vampco, particularly in view of the fact that Vampco transferred the operation to Plainwell and did not continue the business in the community in which it had previously been operated, we do not believe an answer to this question would control this case. We believe the legislature had in mind devising a pro rata formula which would, as between the parties, divide all the rate-making factors involved on an identical basis. The legislature no doubt realized that a division on this basis might or might not be advantageous to one or the other of the parties, depending on the varying circumstances of each case. The purpose of the act is to create and maintain a fund so that those unemployed may receive the benefits of the act. The legislative intent must certainly be in keeping with this end. The unfavorable experience cannot be translated into increased contributions against Industrial since it has disposed of the business. The increased contributions which necessarily must be made in order to meet the benefit payments must of necessity fall upon the transferee, who is presumably operating the business. Neither party

could know at the time of the transfer the exact future experience. The party purchasing may protect itself by contract or by adjustment of the purchase price against such a contingency.

We think the trial court was correct in its finding that "such transferred account" means the rating account which the transferee has after the transferred account has been merged with his prior rating account.

The remaining question raised by appellant deals with whether or not Vampco has been deprived of property without due process of law by its alleged failure to have a reasonable opportunity to submit testimony and have a hearing prior to the original determination by the commission. The original determination contained the following statement:

"This determination will become final unless within 15 days after the date of mailing of this determination, as shown above, a written application for a review and redetermination is filed with this commission."

The redetermination of April 25, 1957, contained the following:

"This redetermination shall become final unless within 15 days after the date of mailing, as shown above, a written appeal is filed for a hearing on this redetermination before a referee."

Vampco took advantage of the provisions above set forth in both instances; it sought redetermination after it received the first notice and upon redetermination sought a full hearing before the referee and received it. Appellant cites numerous authorities, particularly *Morgan* v. *United States,* 304 US 1 (58 S Ct 773, 82 L ed 1129), for the proposition that due process requires notice and hearing to the party to be so deprived of property before *the final order* becomes effective. We agree with the au-

thorities cited; however, in the instant case the language of the determination and the redetermination specifically provides they do not become finally effective until 15 days had elapsed or until reviewed on appeal.

Vampco has had a fair hearing before the referee, at which issues were framed and facts brought out in evidence and, under the provisions of the act, it has appealed even to this Court.

Vampco was not deprived of due process of law but, on the contrary, received fair consideration and was given ample opportunity at hearing to have testimony presented and the issues determined.

The order and judgment of the circuit court affirming the appeal board is affirmed. Appellees shall have costs.

DETHMERS, C. J., and CARR, KELLY, EDWARDS, SOURIS, and OTIS M. SMITH, JJ., concurred.

BLACK, J., did not sit.