EMPLOYMENT SECURITY COMMISSION *v*. ARROW
PLATING COMPANY, INC.

OPINION OF THE COURT.

1. UNEMPLOYMENT COMPENSATION—SUCCESSOR EMPLOYER.
   Statutory definition of successor employer as an individual, legal
   entity, or employing unit which acquired the organization,
   trade, or business, or 75% or more of the assets of an employer
   subject to the act, intended that a successor employer need
   only meet 1 of the listed criteria to be classified as a successor
   employer, thereby becoming subject to the rate of contribution
   of its predecessor (CLS 1961, §§ 421.22, 421.41).

2. SAME—SUCCESSOR EMPLOYER—ACQUIRING TRADE OR BUSINESS.
   Employer in the plating business, which bought part of the
   assets of another employer in the plating business, did not take
   over the trade or business of the purchased employer where
   the clientele of the 2 businesses were different, the sale of cer-

---

REFERENCES FOR POINTS IN HEADNOTES
[1-6, 8] 48 Am Jur, Social Security, Unemployment Insurance and
   Retirement Funds §§ 7, 10, 11, 15.
[7] 5 Am Jur 2d, Appeal and Error § 1009; 48 Am Jur, Social Se-
   curity, Unemployment Insurance and Retirement Funds § 51.

tain assets did not include the sale of customers, and there was evidence that the kind of work performed by the 2 employers would appeal to different markets, so that the purchasing employer did not become a successor employer under the employment security act (CLS 1961, § 421.41).

3. SAME—SUCCESSOR EMPLOYER—ACQUISITION OF ASSETS—ACCOUNTS RECEIVABLE.

The value of accounts receivable owned by a predecessor employer must be included as an asset of the predecessor employer in determining whether a purchaser of part of the assets has obtained more than 75% of the assets of the predecessor employer, so as to become a successor employer under the employment security act (CLS 1961, § 421.41).

4. SAME—SUCCESSOR EMPLOYER—WORDS AND PHRASES—ORGANIZATION.

The word "organization", used in employment security act making one who acquires the organization of an employer a successor employer, means the vital, integral parts which are necessary for continued operation (CLS 1961, § 421.41).

5. SAME—SUCCESSOR EMPLOYER—ORGANIZATION.

Sale of some of the assets of 1 employer, who was partially in the plating business, to a corporation also in the plating business *held*, not to constitute a sale of the organization under the employment security act, where the entire managerial component of the seller was the sole proprietor of the business, and the business could not have continued as a going business without managerial talent (CLS 1961, § 421.41).

6. SAME—SUCCESSOR EMPLOYER—ORGANIZATION.

Transfer of the "organization" of a business for purposes of the employment security act making the transferee of the organization a successor employer *held*, not to occur where a vital, integral part of the business is not transferred, regardless of how many people make up that integral part, so that the business could not continue (CLS 1961, § 421.41).

7. COSTS—CONSTRUCTION OF STATUTE—CONTRIBUTION RATE UNDER EMPLOYMENT SECURITY ACT.

No costs are allowed on appeal in proceeding to determine contribution rate, under employment security act, for defendant employer (CLS 1961, §§ 421.22, 421.41).

8. UNEMPLOYMENT COMPENSATION—SUCCESSOR EMPLOYER—TRANS-
FER OF BUSINESS.

*No transfer of business occurred within the meaning of the em-
ployment security act, so as to make the transferee a successor
employer under the act, where the buyer of the business did
not acquire and use the seller's trade name or good will, did
not continue or resume all or part of the seller's business,
used different processes in its business, and never did business
with any of seller's customers (CLS 1961, §§ 421.22, 421.41).*

Appeal from Wayne; Wise (John M.), J.   Sub-
mitted Division 1 June 7, 1967, at Detroit.   (Docket
No. 3,045.)   Decided March 27, 1968.

Employment Security Commission determined
that Arrow Plating Company, Inc., a Michigan cor-
poration, was subject as a successor employer to
the higher contribution rate paid by Wade Boring
Works.   Arrow Plating Company appealed, and a
referee of the Employment Security Commission
affirmed the higher contribution rate.   Arrow Plat-
ing Company appealed to the Employment Security
Appeal Board, which reversed the finding of the
referee.   Employment Security Commission ap-
pealed to circuit court, which reversed the Appeal
Board.   Arrow Plating Company appeals.   Re-
versed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Richard I. Rubin,*
Assistant Attorney General, for Employment Se-
curity Commission.

*Lawson & Anderson,* for Arrow Plating Com-
pany.

McGREGOR, J.   Basically the facts of this case are
not disputed.   Before and including Friday, Febru-

ary 5, 1965, Frank C. Beck was doing business as the Wade Boring Works in Hamtramck, Michigan. On that Friday, Mr. Beck sold much of the assets of Wade Boring to Arrow Plating Company, Inc., for $15,500. The main asset of Wade Boring seems to have been the right of possession of the building leased by Wade Boring. This was true because the city of Hamtramck allowed the flushing of waste chemicals into the public sewer system, a distinct economic advantage in the plating business because of difficulty in disposing of waste chemicals. The building was not owned by Wade Boring, nor did the lease automatically continue, but apparently the right to continue using the building was understood. Arrow Plating also acquired some plating equipment of Wade Boring and employed the five employees of Wade Boring who worked at the same location. Mr. Beck retained equipment valued at $2,000, accounts receivable valued at $8,000, a bank account valued at $1,500, and an unspecified inventory. Also retained by Mr. Beck and not assigned a monetary value were the trade name of Wade Boring Works, the phone number, customers, and the right to compete.

Arrow Plating began operations in the Hamtrack building February 8, 1965. Within a year, Arrow's work force had grown from 5 employees to 35 employees, and the gross sales were $209,000, compared to Wade Boring's sales in 1964 of $35,000. Arrow's business was confined to plating operations, while Wade Boring had done both plating and sheet metal fabrication.

This appeal has grown out of the subsequent dispute between Arrow Plating Company and the Michigan employment security commission. Normally, a new organization that is subject to the employment

security act, CLS 1961, § 421.1 *et seq.* (Stat Ann 1960
Rev and 1963 Cum Supp § 17.501 *et seq.*) is assessed
a contribution rate of 2.7% of the annual payroll.
This contribution rate is subject to adjustment up
or down, based upon the experience of the employer
·as to layoffs of personnel resulting in payments
from the unemployment compensation fund. This
sliding scale of employer contribution rates is in
line with the purposes of this act, to protect the
people of Michigan from the hazards of unemploy-
ment by encouraging stable employment. In this
case, the employment security commission assessed
Arrow Plating Company at the contribution rate of
·4.6% based on the high unemployment experience
. of Wade Boring Company. The commission thereby
treated Arrow Plating as a successor employer of
Wade Boring under authority of section 22 of the
act,[1] which authorizes a transfer of rating to suc-
. cessor employers, and section 41(2) of the act,[2]
which defines an employer as:

"(2) Any individual, legal entity or employing
unit which acquired the organization, trade or busi-
·ness, or 75% or more of the assets thereof, of an-
other which at the time of such acquisition was an
employer subject to this act."

Our problem is whether Arrow Plating is prop-
erly classed as a successor employer under this act.
Arrow maintains it is not a successor employer
under the act, while the employment security com-
. mission feels otherwise. The commission's referee
· held Arrow Plating was a successor employer. The
. Michigan employment security appeal board re-
versed the referee and held that Arrow was not a
successor employer. The commission filed an appeal
with the circuit court for Wayne county, which

---

[1] CLS 1961, § 421.22 (Stat Ann 1963 Cum Supp § 17.524).
[2] CLS 1961, § 421.41 (Stat Ann 1963 Cum Supp § 17.543).

reversed the appeal board and held Arrow was a successor employer, and thus subject to the transfer of the employer experience rating.

The critical wording of section 41(2) is the phrase defining what must be acquired by a successor employer as "the organization, trade or business, or 75% or more of the assets". By using the conjunction "or", the legislature obviously intended that a successor employer need only meet one of these listed criteria to be so classified.

No issue is raised in this case as to whether Arrow Plating took over the trade or business of Wade Boring. It is clear that it did not. The clientele of the two businesses were different. The sale of certain assets did not include the sale of customers. There is also evidence that the type of work performed by the two companies would appeal to different markets. This case is thus factually different from *Valley Metal Products Company* v. *Employment Security Commission* (1961), 365 Mich 297, which presented some elements similar to this case, but where the trade or business was transferred.

The Michigan employment security commission advances the theory that Arrow Plating obtained more than 75% of the assets of Wade Boring Works, because the value of the accounts receivable can be disregarded. The commission argues that including the accounts receivable as an asset would be like having a purchaser pay cash for cash. This theory was held untenable by the trial court. We agree. It is admitted by the commission that its theory is not in accord with standard accounting principles. This theory is also not in accord with the legal precedents of Michigan, that intangible assets are properly considered as assets for the purpose of the employment security act. *Russ Dawson, Inc.* v. *Unemployment Compensation Commission* (1952), 334

Mich 82. It must be pointed out that the accounting practices used in this transfer have made the job of this Court more difficult. The highest value in the transfer was assigned to the plating equipment, although the president of Arrow Plating admitted his company's concern was not primarily in the equipment, which was mostly scrapped within a few months, but in the right to use a building with a favorable location. This asset was not assigned a value in the transfer. Causing further consternation is the fact that several of the intangible assets retained by Frank Beck were not assigned a value. While these accounting practices make it impossible for this Court accurately to determine the exact value of those assets transferred and those retained, it is possible to determine that those assets transferred were something less than 75% of the total tangible and intangible assets of Wade Boring.

The remaining phrase defining a successor employer was the downfall of defendant Arrow Plating in the trial court. It was held that Arrow acquired the "organization" of Wade Boring because it retained the work force of Wade Boring. Such a holding was erroneous.

The term "organization" has not been expressly defined in Michigan; therefore, confusion concerning the term is not surprising. In order to define "organization" for the purposes of this statute, attention must be paid to the evil this section of the act sought to combat. The successor employer provision seeks to prevent the sliding scale employer contribution rate from being defeated by paper reorganizations which, in fact, change nothing. In this light, "organization" means the vital, integral parts which are necessary for continued operation. In this case, there was not a transfer of the vital, integral parts required for continued operation of

the Wade Boring Works. Mr. Frank Beck consti-
tuted the entire managerial component of Wade
Boring Works, and it could not have continued as a
going business without managerial talent. There-
fore, the "organization" of Wade Boring Works
was not transferred to the appellant Arrow Plating
Company. We do not hold in any way that the
mere elimination of one person from the organiza-
tion of a business would automatically prevent the
transfer of the organization for the purposes of this
act. What we do hold is that if a vital, integral
part of the business is not transferred, regardless
of how many people make up that integral part, so
that the business could not continue, then there has
not been a transfer of the "organization" for the
purposes of this act.

The decision of the circuit court is reversed. No
costs, the interpretation of a public statute being
involved.

FITZGERALD, P. J., concurred with McGREGOR, J.

LEVIN, J. (*concurring*). The employment security
act contains two applicable definitions. One defines
"employer"[1] and the other defines "transfer of busi-
ness."[2] It appears from a comparison of the two

---

[1] "Sec. 41. 'Employer' means * * * (2) Any individual, legal
entity or employing unit which acquired the organization, trade or
business, or 75% or more of the assets thereof, of another which
at the time of such acquisition was an employer subject to this act."
CLS 1961, § 421.41 (Stat Ann 1963 Cum Supp § 17.543).

[2] "Sec. 22(a) If an employer subject to this act transfers subse-
quent to June 30, 1954, any of the assets of his business by any
means otherwise than in the ordinary course of trade, such transfer
shall be deemed a 'transfer of business' for the purposes of this sec-
tion if the commission determines:

"(1) That the transferee is an employer subject to this act on the
transfer date or has become so subject as of the transfer date under
section 41(2) * * * and

"(2) That the transferee has acquired and used the transferor's
trade name or good will, or that the transferee has continued or
within 12 months after the transfer resumed all or part of the busi-

definitions that the legislature intended to impose
the liability of an "employer" on one who acquires
the business of a former employer upon a lesser
showing than that required to tack the unemploy-
ment claims experience of the former employer onto
one who continues, as well as acquires, the former
employer's business.

It will be observed (footnotes 1 and 2) that while
one who acquires the "organization, trade or busi-
ness" of another is an "employer", such an acquisi-
tion is not regarded as a "transfer of the business"
unless there has been either an acquisition and use
of the transferor's trade name or good will, or the
transferee has continued or resumed all or part of
the business of the transferor.

I am inclined to think that when Arrow Plating
acquired all the employees, excepting the proprietor
Mr. Beck, all the plating equipment and the lease-
hold of Wade Boring Works, which leasehold, al-
though terminable, was not in fact to be termi-
nated—indeed, the leasehold was the *raison d'etre*
of the entire transaction—Arrow acquired the "or-
ganization, trade or business" of Wade.[3] This inter-
pretation of the statutory definition of "employer"
seems more consistent with the act's apparent pur-
pose, which is, no doubt, to continue coverage under
the act in situations such as this one without the
necessity of waiting for 20 weeks to expire.

However, I see no need to decide whether Arrow
is an "employer". The only question raised by the
Michigan employment security commission determi-
nation, taken to the appeal board by Arrow, was
whether there was a "transfer of business" within

ness of the transferor either in the same establishment or elsewhere."
CLS 1961, § 421.22 (Stat Ann 1963 Cum Supp § 17.524).

[3] The question does not turn on disputed facts, nor would it ap-
pear to be one within the special competence of the appeal board to
decide.

the meaning of section 22(a).[4]  I agree with my colleagues there was not a "transfer of business".

It is undisputed that Arrow did not acquire and use Wade's trade name or good will.  Nor did Arrow continue or resume all or part of Wade's business. Wade and Arrow used different plating processes. Arrow never did business with any of Wade's customers.  Thus, Arrow's method of operation, product, and customers were different from that of Wade. The appeal board's finding that there was not a "transfer of business" is supported by substantial evidence.

I concur in the reversal of the judgment here on appeal.

---

[4] While the appeal board decided both that Arrow was not an employer and that there was not a transfer of business, the basic dispute was whether by reason of a "transfer of [Wade's] business" to Arrow, Arrow should be burdened with the higher experience rating of Wade.  This appears not only from the nature of the arguments to us, but also from the initiating document.  That document, a "notice of determination of transfer of rating account", from the employment security commission to Arrow, advised Arrow that certain records indicated that on February 7, 1965, a *transfer of business* occurred "wherein you acquired assets involving 100% of the payroll for the four completed calendar quarters prior to the date of acquisition, from Frank C. Beck, an individual owner, d/b/a Wade Boring Works", and that, accordingly, it was determined the total rating account of the transferor would be transferred to Arrow *as provided in section 22 of the act*.  It was from that determination that Arrow appealed.  The employment security commission later issued a redetermination confirming its prior determination.  Arrow appealed that redetermination.