BRADLEY, Judge.
This is an unemployment compensation case.
Mac Del Health Care, Inc., was determined to be a successor employer to Tompkins Nursing Home, Inc., under section 25-4-8(a)(4)a, Code 1975, and was assessed unemployment compensation tax on the basis of Tompkins’s experience rating, pursuant to section 25-4-54(i), Code 1975. Mac Del paid the tax under protest and unsuccessfully sought administrative relief. A trial de novo was thereafter held in Jefferson County Circuit Court in which Mac Del was found not to be a successor in interest to Tompkins. An appeal on the part of the State Department of Industrial Relations and a cross-appeal from Mac Del followed to this court.
Because of the intensely factual nature of this ease, we shall recount the sequence of events leading up to this appeal in considerable detail. Tompkins Nursing Home, Inc., was engaged in the business of providing health care at a Birmingham facility leased from Carrie Lee Tompkins. The lease was conditioned on the fact that:
“[Tompkins] shall operate said Nursing Home in accord with all of the provisions of the State Department of Health, and that if at any time their license to operate is in [jeopardy] or if the Nursing Home is placed upon probation by said State Health Department, or if said license is revoked then this lease shall be immediately terminated and the premises revert to the Lessor.”
Carrie Lee Tompkins, as lessor, retained a security interest in “all the furniture, fixtures, machines, appliances, inventories and supplies” located in the facility. Following a hearing on August 20, 1975, Tompkins Nursing Home’s license was revoked for fraud and failure to follow State Health Department guidelines. Prior to that hearing, however, on January 13, 1975, Tompkins Nursing Home was notified by the estate of Carrie Lee Tompkins that its pos-sessory interest in the property had been terminated and was ordered to vacate the premises within ten days. The revocation was to become effective at midnight August 31,1975, and Tompkins was notified to relocate its patients prior to that date.
At some point around August 1, 1975, Delmus Hyche, a nursing home operator in the Jefferson County area, was contacted by an attorney for the guardian of Carrie Lee Tompkins to see if he was interested in operating a nursing home at the Tompkins facility. After inspecting the premises and ascertaining information about obtaining a license, Hyche agreed to lease the facility on behalf of Mac Del from the estate of Carrie Lee Tompkins. The lease was to commence on September 1, 1975 and was conditioned on the Tompkins estate’s ability to gain possession of the premises. It further provided that Mac Del was to acquire:
“The land and buildings located at 2211 16th Street, S.W. (Ishkooda), Birmingham, Alabama, and known as Tompkins Nursing Home for use and [occupation] by the Lessee as Nursing Home for the term of two (2) years. Also subject to this lease is all of the personal property located at such premises used in the operation of the nursing home and owned by Lessor and/or Tompkins Nursing Home, *50 Inc., including but not limited to the following: furniture, fixture[s], office machines, files, appliances, inventories and supplies.
“Lessee shall have the right to use the name: ‘Tompkins Nursing Home’ for the period of the Lease.”
Hyche was not allowed to enter the nursing home prior to the commencement of Mac Del’s lease on September 1, 1975. When he did enter the facility between 7:00 a.m. and 8:00 a.m. on that date he was accompanied by a security guard provided by the Birmingham Police Department following rumors of threats against him. Thirty patients of Tompkins remained at the facility at the time that Hyche arrived even though management had been notified previously to relocate the patients in other facilities. The Tompkins staff had been dismissed by a letter from the Tompkins estate; however, some former employees were on the premises at the time. Hyche gave them applications from Mac Del, and approximately twenty-eight were hired, including the former director of nursing for Tompkins who was retained to oversee Mac Del’s business. Some of the former Tompkins employees were turned down because they did not meet Hyche’s standards, and the former director of nursing was later dismissed.
The issue in this appeal is whether Mac Del Health Care, Inc., is a successor in interest to Tompkins Nursing Home, Inc,, under section 25-4-8(a)(4)a, Code 1975. Section 25-4-8(a)(4)a provides in pertinent part that:
“(a) ‘Employer’ . .. shall mean:
“(4) Any employing unit ... which:
“a. Acquired the organization, trade or business, or substantially all the assets thereof, of another employing unit which at the time of such acquisition was an employer subject to this chapter .... ”
Thus, from the language of section 25-4-8(a)(4)a, Code 1975, if Mac Del acquired either “the organization, trade or business, or substantially all the assets” of Tompkins Nursing Home, Inc., it is a successor in interest to Tompkins and is liable for the assessment under section 25 — 4—54(i). However, we note from the language of the statute itself, that the acquisition must be made from another “employing unit” which is liable under the Alabama Unemployment Compensation Act at the time.
The director of the Department of Industrial Relations argues that Mac Del is liable for the assessment based on Tompkins’s experience rating because it acquired substantially all the assets and the organization, trade, or business of Tompkins. Mac Del answers that the provisions of section 25-4-8(a)(4)a are inapplicable since Tompkins Nursing Home was not a going concern at the time of the transfer. It further argues that the reversionary clause in the Tompkins lease had become effective at some point before the January 13, 1975 termination notice from the estate of Carrie Lee Tompkins and that Mac Del took its interest in the property from the Tompkins estate.
In advancing the position that Mac Del should be taxed on the basis of Tompkins’s experience rating, the director of the Department of Industrial Relations places great emphasis on the Connecticut case of Harris v. Egan, 135 Conn. 102, 60 A.2d 922 (1948), where the court held that the term “substantially all the assets” is one which should be defined with a high degree of “elasticity.” It is undisputed in the instant case that Mac Del acquired by lease the right to use the premises formerly occupied by Tompkins and all the personal property and fixtures remaining therein. It is also equally clear from the record that some former patients and employees remained after Mac Del took over. However, these facts do not illuminate the key issue of whether Mac Del’s leasehold interest was acquired from Tompkins. Mac Del contends, and we agree, that because of the reversionary clause in Tompkins’s lease that its interest was acquired from the estate of Carrie Lee Tompkins. As we said in State v. Gibson’s Barbecue, 369 So.2d 1229 (Ala. Civ.App.1978), cert. denied, 369 So.2d 1235 (Ala.1979), “the statute requires only a succession of employing units through the ac *51 quisition of substantially all the assets.” Here, there was no “succession of employing units.” Because of the reversionary clause in Tompkins’s lease, Mac Del took its leasehold interest from the estate of Carrie Lee Tompkins which was not, in any sense of the word, an employing unit subject to the Alabama Unemployment Compensation Act. Having found that Mac Del was not a successor in interest to Tompkins, we also find that it was not liable for an unemployment compensation tax assessment on the basis of Tompkins’s experience rating because it did not acquire its interest in the nursing home from Tompkins.
Mac Del, by way of cross-appeal, claims that it should receive interest on its refund from the Department of Industrial Relations. We disagree. Section 25-4-134, Code 1975, requires as a condition precedent to appeal in an unemployment compensation tax assessment that the employer pay the amount of tax claimed or execute a supersedeas bond for double the amount of the tax. However, the Alabama Unemployment Compensation Act is silent as to the payment of interest on a subsequent refund. As the supreme court said in Glass v. Prudential Insurance Co. of America, 246 Ala. 579, 22 So.2d 13 (1945), “when a tax refund statute is silent as to interest, it does not imply that interest should be paid.”
For the foregoing reasons we find no error in the decision of the trial court.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.