**EASY STREET WEST, Relator,**

**v.**

**COMMISSIONER OF ECONOMIC SECURITY, Respondent.**

**No. C1–83–1155.**

Court of Appeals of Minnesota.

Feb. 22, 1984.

Michael M. Whalen, Minneapolis, for relator.

Hubert H. Humphrey III, Atty. Gen., Paul N. Heckt, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal from a decision of the Commissioner of Economic Security affirming a decision issued by the appeal tribunal. After a hearing held April 14, 1983, the appeal tribunal affirmed the determination of the tax branch of the Minnesota Department of Economic Security that relator, ESW, Inc. d/b/a Easy Street West (ESW), acquired and continued the employing enterprises of Comda, Inc. d/b/a Junior's (Comda), and was therefore required to adopt Comda's unfavorable employment experience rating record. We reverse.

## FACTS

The facts applicable to this matter are undisputed. The parties disagree only as to the legal question of whether Minn.Stat. § 268.06(22)(a) applies in this case.

In September, 1980, ESW purchased the equipment and inventory of Comda, which operated a bar known as Junior's in St. Paul, catering primarily to the "biker" (motorcycle gang) trade. At the same time, the president and sole shareholder of ESW, David A. Eichinger, purchased Comda's building and fixtures and leased them to ESW. Prior to the sale, Comda had achieved a notoriously poor employment experience rating record based on its history of unstable employment.

Immediately after the sale of Comda's equipment and inventory to ESW, Henry Troje, Comda's principal, moved his business about a mile up the street and began managing and operating a bar owned by his father. Comda's goodwill was neither sought nor acquired by ESW, and Eichinger took steps to ensure that Comda's "biker" trade followed Troje up the street.

ESW opened and started a new business entirely from scratch. In doing so, ESW not only adopted a new name, but adopted new business methods and practices and established a new character and clientele as a neighborhood bar. ESW did not hire any of Comda's five employees. For the first three or four months of operation, Eichinger ran the establishment entirely by himself, without salary.

Similarly, ESW did not hire or rely on the old management of Comda and was actually competing with Troje who was managing another bar a mile down the street. In large part, the old "biker" clientele followed Comda's employees and management.

In establishing its own business, ESW has achieved a high level of stability in employment. The Commissioner held that ESW must succeed to and continue Com-

da's unfavorable experience rating pursuant to Minn.Stat. § 268.06(22)(a). If ESW is required to assume Comda's experience rating, it will be required to pay substantial amounts in additional unemployment taxes.

## ISSUE

Where ESW purchased substantially all the physical assets of a bar, continued its operation at the same location, but did not continue any of the employees, management, clientele or goodwill, does ESW's use of the assets in the same line of business automatically result in its inheriting the experience rating of the prior owner pursuant to Minn.Stat. § 268.08(22)(a)?

## ANALYSIS

### I. History.

This is a case of first instance. A short historical legislative perspective is in order to more fully understand the issues of law and fact involved in this case.

The legislative history of transfer of experience rating to successor employing units is long, involved, and complex. Its importance lies not only in recent legislative amendments, but also in the history of this particular section of the law. Memories become dim recalling that unemployment compensation plans were enacted in response to a federal enactment of 1935. They have been supported solely by employer contributions. Experience rating is a method whereby those contributions are gauged to the employer's prior employment record. Generally then, if relatively few former employees have become eligible for benefits, the employer's rate of contribution is adjusted downward. It is difficult to comprehend that in the dim past, the minimum contribution was less than 1% with a cap of 2.7%. Today, the cap (at this writing) is 7.5% of gross wages.

The purpose of experience rating is based on the theory that unemployment is to some extent within the control of management and that lower taxes will be an incentive to employment stabilization.

With relatively stable employment, the legislative amendments were always aimed at restricting succeeding employers from acquiring the favorable experience rating of a predecessor employer without actual proof of "acquiring the organization, trade or business, or substantially all the assets of another unit," and further proof of "continuation of the employment activities," the logic being that an employer's contribution is measured by his experience and, when his experience is likely to be that of his predecessor, his contributions should be that of his predecessor. Logically, therefore, amendments were made with this purpose in mind, i.e., a successor employer may not adopt the experience rating of a predecessor employer when done for purposes of avoiding a higher tax rate. During the past 40 years, Minnesota required a petition and a finding by the commissioner that the successor was entitled to the transfer of the employment experience record provided he met the commissioner's standards, i.e., that there was a continuation of the employment activities of the predecessor and the purpose was not to "buy out" a lower contribution rate.

In 1973, the legislature deemed the successor to be a successor, without petition to the commissioner, subject, however, to the same standards and proper reporting. Act of May 23, 1973, Ch. 599, § 3, 1973 Minn. Laws 1380, 1390.

In 1975, the section was rewritten and again its thrust, historically as before, sought to restrict, under more formal and definite standards, a successor from acquiring a predecessor's favorable rate. Act of June 4, 1975, Ch. 336, § 9, 1975 Minn.Laws 950, 966.

The import of the legislative amendment was merely to prohibit successor employers from succeeding to a lower experience rate from the predecessor employer without any certainty that the successor would acquire the trade or business and continue the same by merely trying to "buy out" a different type of business. The legislature intended to prohibit employers from buying a lower tax rate.

In 1979, the legislature made another change:

> Subd. 22. EMPLOYMENT EXPERIENCE RECORD TRANSFER. (a) When an employing unit succeeds to or acquires the organization, trade or business or substantially all the assets of another employing unit which at the time of the acquisition was an employer subject to this law, and continues such organization, trade or business, the employment experience rating record of the predecessor employer shall be transferred as of the date of acquisition to the successor employer for the purpose of rate determination.

Act of May 24, 1979, Ch. 181, § 7, 1979 Minn.Laws 255, 269–70 (emphasis indicates amendment). Again, the legislature intended to ensure that the successor employer continues the same organization, trade or business to ensure that the purpose of such change was not to avoid a higher contribution rate.

In 1984, when we are experiencing a recession of a magnitude such as has not occurred for over three decades, the Commissioner is attempting to use the language that was applicable for unfair attempts to secure a lower rate to now postulate that a successor employer, as long as he purchases substantially all of the assets of his predecessor and continues such organization, trade or business, is stuck with the predecessor's poor experience rating.

The shield has become a sword against newly-formed small businesses. We must interpret the statute as it is written, and particularly as it relates to the 1979 amendments.

## II. Application and interpretation of Minn.Stat. § 286.06(22)(a).

A new employer's experience record is determined by the Economic Security Act. The commissioner found that ESW had succeeded to Comda's experience record because the Act provides that:

> [w]hen an employing unit succeeds to or acquires the organization, trade or business or substantially all the assets of another employing unit ... and continues such organization, trade or business, the experience rating record of the predecessor employer shall be transferred as of the date of acquisition to the successor employer for the purposes of rate determination.

Minn.Stat. § 286.06(22)(a) (1982) (emphasis added, 1979 amendment).

ESW admitted, and the Commissioner found, that it acquired substantially all the physical assets of Comda. ESW, however, denies that it continued Comda's business and argued instead that it started its own business using Comda's former physical assets. The Commissioner implicitly agreed that ESW did not continue Comda's specific business, but found that ESW's operation of the "same type of business" was sufficient to trigger subdivision 22(a) and thereby force ESW to assume Comda's dismal experience rating.

A. While ESW acquired substantially all of Comda's physical assets, ESW did not continue Comda's trade or business within the meaning of Minn.Stat. § 268.06(22)(a).

■■■■ Subd. 22 provides a two-tiered structure for determining treatment as a "successor" employer. If one acquires substantially all the assets of a particular business operation, then one reaches the first tier of successorship and can be held jointly liable for contributions due and not paid by one's predecessor. Minn.Stat. § 268.06(22)(a) & (c).[1] If, in addition, one then continues that same particular business operation, the second tier of successorship is achieved, and one assumes the predecessor's employment experience rat-

---

1. Minn.Stat. § 268.06(22)(c):

   An employing unit which succeeds to or acquires the organization, trade or business or substantially all the assets of an employer shall notify the department in writing of the acquisition not later than 30 days after the acquisition. Failure to give notice shall render the predecessor and successor employing unit jointly and severally liable for contributions due and unpaid by the predecessor.

ing record for purposes of rate determination.

However, since the employment experience rating record determines the level of an employer's future contributions to the unemployment compensation system, transfer of the predecessor's employment experience rating record to the successor is fair and logical only when the essential character of the business is continued so that the employment experience of the successor is likely to be that of its predecessor.

■ Thus, the second tier (continuation) requires that the successor business continue the fundamental character or identity of the predecessor's business. Mere purchase of the physical assets of the predecessor and use of the assets in the same kind of business are not sufficient to meet the second tier test and authorize transfer of the predecessor's experience rating to the successor.

There is no reported Minnesota case law interpreting the continuation requirement of Minn.Stat. § 268.06(22). The legislative amendment of 1979 added "and continues such organization, trade or business." It is clear that mere acquisition was not enough, but that the legislature intended specific proof of continuation within the exact terminology used.

In determining whether a successor has continued the essential character of a predecessor's business for purposes of transfer of experience rating, the courts of other states have generally looked for carry-over of three crucial elements: management, employees, and clientele. When those elements continue, then the organization, trade, or business is considered to have been continued by the successor.

### 1. *ESW did not continue the former management.*

In *Michigan Employment Sec. Comm'n v. Arrow Plating Co.,* 10 Mich.App. 323, 159 N.W.2d 378 (1968), the court, interpreting the Michigan counterpart to Minn.Stat. § 268.06(22), stated that "organization" means the vital, integral parts which are necessary for continuation of the business and includes, at a minimum, the management component of the business. In the instant case, not only did ESW not hire any of Comda's management personnel or carry over any of Comda's business management practices, it did not hire any of Comda's employees, and it continued to use the business management practices of the retail liquor establishment Eichinger formerly owned and operated in Los Angeles.

The Commissioner concedes that ESW did not continue Comda's organization.

### 2. *ESW did not continue the former clientele.*

■ Similarly, there is no evidence that ESW continued the "trade or business" of Comda. Within the context of an experience rating transfer statute, continuing the "trade or business" implies a transferral of a specific market or clientele from the former to the new. *D.I.R. v. Gibson's Barbecue, Inc.,* 369 So.2d 1229 (Ala.Civ.App. 1978); *Michigan Employment Sec. Comm'n v. Arrow Plating Co.,* 10 Mich. App. 323, 159 N.W.2d 378 (1968); *Grand Rapids Dry Goods Co. v. Michigan Employment Security Commission,* 348 Mich. 177, 82 N.W.2d 479 (1957). Here, ESW neither sought, acquired, nor purchased Comda's goodwill. Moreover, Comda's predominate "biker" clientele followed Troje up the street to his father's bar; the "biker" trade was actively discouraged from patronizing the new establishment. The commissioner concedes that ESW was not interested in attracting Comda's clientele.

### 3. *ESW did not continue the former employees.*

Other states have held that retention of the predecessor's employees is a crucial element in determining whether the successor should be charged with the employment experience rating record of the predecessor. *Robert Snyder and Assoc., Inc. v. Cullerton,* 75 Ill.App.2d 1, 221 N.E.2d 148 (1966) (transfer of experience rating not allowed where successor retained only 4 of

predecessor's 43 employees); *Ekco Prod. Co. v. Cummins*, 5 Ill.2d 307, 125 N.E.2d 526 (1955) (transfer of experience rating authorized where successor hired 61 of predecessor's 65 employees); *Jacob Schlachter & Sons Co., Inc. v. Admr.*, Ohio Ct.App., Franklin Co., Dec. 22, 1964 (successor not subject to predecessor's contribution rate where he acquired only 6 of predecessor's 25 employees); *University Inns of Athens, Inc. v. Admr.*, Ohio Ct. of Common Pleas, Franklin Co., Sept. 25, 1974) (subsequent employer not entitled to successor status where it failed to employ substantially the same people as the former employer, even though substantially all the assets of the former employer's business had been acquired). In this case, ESW did not continue the employment of *any* employees of Comda.

B. The commissioner's decision is based on a mistaken construction of Subd. 22(a).

The commissioner's decision is based upon a misconstruction of Minn.Stat. § 268.06(22)(a) to mean that a predecessor's business is continued for purposes of transfer of experience rating if the successor continues in the same "line of business" and "in the same location":

> It is our view that the phrase " * * * and continues such * * * trade or business" includes circumstances such as exist in this case, where the employer continued the same type of business, and in the same location, although he was not interested in attracting the same clientele. We simply feel that the interpretation urged by counsel is much too narrow, and would act to defeat what we feel are the purposes of the statute.

Commissioner's Memorandum (emphasis added).

◼ a. There is no rationale supporting transfer of employment experience rating record just because an employer remains in the same line of business as the employer whose physical assets it has purchased. The Minnesota Employment Services Law is directed towards employment relations; its declared public policy is to encourage employers to provide more stable employment. Minn.Stat. § 268.03. Thus, the contribution rate is designed to place a greater burden on those employers who are unable to maintain a steady pattern of employment. *Neeland v. Clearwater Memorial Hospital*, 257 N.W.2d 366 (Minn.1977). Transfer of a predecessor's employment experience rating record for purposes of determining the successor's contribution makes sense only where the essential character of the predecessor's particular operation—not just the type or line of business—is continued by the successor. It is only under these circumstances that the employment experience of the predecessor is likely to continue and transfer of the employment experience rating record is justified.

The same conclusion was reached by the Illinois Appellate Court in *Robert Snyder and Assoc., Inc. v. Cullerton*, 75 Ill.App.2d 1, 221 N.E.2d 148 (1966).

Though couched in slightly different language, the Illinois and Minnesota transfer provisions are based upon the same rationale. Under both, transfer of the predecessor's experience rating record is authorized only where there has been a succession to substantially all of the predecessor's particular business as a going business. In the instant case, there is no evidence to support such a determination.

◼ b. Location, in this case, cannot be determinative. ESW had absolutely no choice in where to locate its business. Both Minn.Stat. § 340.13, Subd. 5, and City of St. Paul Leg.Code § 409.06, Subd. 5 require that ESW operate its on-sale liquor business only on the licensed premises. Since ESW had no choice in the location of its business, it is unfair to hold that the location of the business made ESW the involuntary successor of Comda.

In short, ESW acquired the physical assets of Comda and nothing more. Only Comda's facilities and equipment were acquired, not its name, organization, employees, goodwill or clientele. ESW did not in

any way want to be identified with Comda, much less continue its operation. ESW's sole interest was in building its own business—with a different clientele—using its own employees and its own business practices. Indeed, it was unclear what more ESW could have done to make clear it was not continuing Comda's "organization, trade or business" and avoid being saddled with Comda's unfavorable rating record.

The commissioner did not cite any precedent for the proposition that continued use of acquired assets in the same industry requires, or even supports, the transfer of an experience rating. The only case on which the commissioner affirmatively relies is *Valley Metal Prod. Co. v. Michigan Employment Sec. Comm.*, 365 Mich. 297, 112 N.W.2d 470 (1961). In *Valley*, the court did not rule that the mere sale of physical assets and their subsequent use in the same industry rendered the purchaser a successor, as the commissioner indicated. Rather, the court analyzed the specific elements of the particular business and found, in part, that "Industrial assigned to Vampco its window trademark and agreed not to compete in the window business." *Id.* at 301, 112 N.W.2d 472. In *Valley*, the court in fact found that the purchaser had acquired not only the physical assets of Industrial's window business, but also that it attempted to continue Industrial's clientele or market. *Valley* supports, in essence, the proposition that the issue of successorship ultimately depends on the continuation of one of the three crucial elements of any particular business: management, employees, and market or clientele. In this case, the commissioner did not and could not find that any of the crucial elements of Comda's business continued.

Similarly, the commissioner's attempts to distinguish *Michigan Employment Sec. Comm'n v. Arrow Plating Co.*, 10 Mich. App. 323, 159 N.W.2d 378 (1968) on the basis that "[n]o issue is raised in the case as to whether Arrow Plating took over trade or business of Wade Boring," *Id.* at 328, 159 N.W.2d at 380. But it is precisely why it was clear to the court that the trade or business had not been taken over that is important here:

The clientele of the two businesses were different. The sale of certain assets did not include the sale of customers. There is also evidence that the type of work performed by the two companies would appeal to different markets.

*Id.* The same is true in the instant case. The commissioner's attempt to imply that ESW continued Comda's trade or business because "both companies operated a retail liquor establishment open to the same general public" can hardly be taken seriously. By definition, all retail establishments are open to the general public.

### DECISION

 Minn.Stat. § 268.06(22)(a) authorizes transfer of the employment experience rating record of one employing unit to another only where "an employing unit succeeds to or acquires the organization, trade or business or substantially all the assets of another employing unit ... and continues such organization, trade or business." There is no evidence in this case that ESW continued Comda's "organization, trade or business" as those terms are to be understood within the context of an employment experience rating transfer provision.

Reversed.