**MID–AMERICA FESTIVALS
CORPORATION, Relator,**

v.

**COMMISSIONER OF DEPARTMENT
OF ECONOMIC SECURITY,
Respondent.**

**No. C3–83–864.**

Supreme Court of Minnesota.

June 8, 1984.

John M. Gendler, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for respondent.

SCOTT, Justice.

Mid-America Festivals Corporation (Mid-America) appeals from a determination of the Commissioner of the Department of Economic Security that Mid-America is a successor corporation under Minn.Stat. § 268.06, subd. 22(a) (1982). That determination imputed to Mid-America the unemployment compensation experience rating of its predecessor corporation, Honeywell Country Club, Inc. (Honeywell). On appeal, Mid-America argues that it did not succeed to or acquire the organization, trade, business or substantially all the assets of Honeywell. We reverse.

Mid-America and Honeywell entered into a purchase agreement on November 18, 1980, for a 245-acre country club owned and operated by Honeywell. Mid-America intended to continue using the premises as a country club and as a new site for its Renaissance Festival, currently operated in Scott County. The closing date for the purchase was originally set for December 31, 1980. The purchase price was $1,250,-000, payable as follows: $25,000 earnest money, $225,000 cash on the date of closing, and $1,000,000 in deferred payments.

A contractual provision allowed Mid-America to extend the closing date until June 1, 1981. To effectuate the extension Mid-America had to pay Honeywell $10,-000, which could be applied toward the purchase price if the contract was consummated. The closing was extended to June 1, 1981, and Mid-America requested an additional extension by supplemental purchase agreement until November 1, 1981, for which it paid a nonrefundable sum of $50,000, not applicable toward the purchase price. The $50,000 was payable in installments: $10,000 upon execution of the supplemental purchase agreement, and $10,000 on May 1, June 1, July 1, and July 20, 1981.

Prior to the contractual extension of the closing date, Mid-America, on April 1, 1981, entered into a lease agreement with Honeywell. Honeywell did, in fact, lease its

premises to Mid-America from April 1, 1981, to December 31, 1981. It is undisputed that Mid-America intended to purchase the country club throughout this leasehold period. The lease entitled Mid-America to occupy and use the clubhouse building, other buildings and golf-course grounds. Mid-America did not assume any of Honeywell's accounts payable or receivable.

The lease contained customary provisions; *i.e.*, fully insuring the property with proceeds to be paid to the owner of the fee, and a provision preventing structural changes. Article 15 of the lease made Mid-America responsible for costs including, but not limited to, the payment of the mortgage (principal and interest), taxes and special assessments, repairs and maintenance (including replacement of capital equipment), payments for the existing security system, the HVAC maintenance system, salaries for employees upon premises, claims of any club members and vendors, suppliers or otherwise and all other costs and expenses which might arise with regard to the premises. The lease also included a clause for Mid-America to indemnify and hold harmless Honeywell for any action or suit against Mid-America or Honeywell during the term of the lease. Mid-America deposited $27,024 with Honeywell for the first half taxes for the property and $15,000 as a lease deposit. The rental payment was only $1 per month.

The issue on appeal is whether relator succeeded to or acquired the organization, trade or business or substantially all the assets of Honeywell. Subdivision 22(a) of Minn.Stat. § 268.06 requires that:

> When an employing unit *succeeds to or acquires the organization, trade or business or substantially all the assets of another employing unit* which at the time of the acquisition was an employer subject to this law, *and continues such organization, trade or business,* the experience rating record of the predecessor employer shall be transferred as of the date of acquisition to the successor employer for the purpose of rate determination.

(Emphasis added.) The commissioner's determination that Mid-America is a successor to Honeywell focuses almost entirely on the leasehold arrangement and the purchase agreement, which Mid-America breached. Mid-America argues that it acquired only a bare possessory lease from Honeywell, that lasted only nine months, with an option to purchase the property. Accordingly, it believes it did not acquire or succeed to Honeywell's business enterprise. The Department of Economic Security counters that the lease was really more than just a lease; it was part of a package that would culminate in an outright purchase of Honeywell's business. The lease, it argues, was merely an interim arrangement.

 The application of the successorship statute transcends form and focuses on the substance and nature of the transaction. Contrary to Mid-America's argument, one can lease property in the course of purchasing a business and be considered a successor. *See, e.g., Robert Snyder & Associates, Inc. v. Cullerton,* 75 Ill.App.2d 1, 221 N.E.2d 148 (1966); *Sea Crest Hotel, Inc. v. Director of Division of Employment Security,* 330 Mass. 226, 112 N.E.2d 813 (1953); *Michigan Employment Security Commission v. Allied Supermarkets, Inc.,* 10 Mich.App. 650, 160 N.W.2d 359 (1968). See also the following case which implies the same result: *James v. Mac Del Health Care, Inc.,* 428 So.2d 48 (Ala.Civ. App.1982). Also, the duration of the lease is not dispositive of the successorship issue. Many businesses employ the method of leasing, rather than an outright purchase, for the tax advantages it generates.

 The Minnesota Court of Appeals recently addressed the issue of successorship in *Easy Street West v. Commissioner of Economic Security,* 345 N.W.2d 250 (Minn.App.1984). Interpreting Minn.Stat. § 268.06, subd. 22(a), the court correctly stated that the statute was enacted to prevent employers from acquiring a more favorable experience rating of a predecessor employer without proof that the purchaser acquired the organization, trade or busi-

ness or substantially all of the assets of another employing unit. *Id.* at 253. Allowing a corporation to "buy out" a lower contribution rate would be detrimental to the integrity of the unemployment compensation fund since the new experience rating attributed to the successor would not accurately reflect its true experience rating. *Id.* at 253–54.

■ The purpose for which the statute was enacted is not met in the instant case. Here, section 268.06, subd. 22(a), is used offensively to protect the unemployment compensation fund, and to garner additional contributions for that fund. The shield has become a sword. While the statute appropriately applies in either situation, the purpose behind the statute should be kept in mind where a corporation is seeking to avoid successorship. In those circumstances, rigid application of the successorship statute to a · purchasing corporation may act as a disincentive to corporations desiring to purchase the assets of another enterprise. The "[m]ere purchase of the physical assets of the predecessor and use of the assets in the same kind of business are not sufficient to * * * authorize transfer of the predecessor's experience rating to the successor." *Easy Street West,* 345 N.W.2d at 255. The successor business must also *continue* the fundamental character or identity of the predecessor's business. *Id.*

■ There are many factors which may be examined to discern whether a business has succeeded to, or acquired, the organization, trade or business or substantially all the assets of another employing unit. Among them are whether the purported successor purchased, leased or assumed the (1) machinery and manufacturing equipment, (2) office equipment, (3) corporate name, (4) inventories, (5) covenant not to compete, (6) possession of premises, (7) goodwill, (8) work in progress, (9) patent rights, (10) licenses, (11) trademarks, (12) trade names, (13) technical data, (14) lists of customers, (15) sales correspondence, (16) books of accounts, and/or (17) employees. *See Robert Snyder and Associates, Inc.,* 75 Ill.App.2d at 11–12, 221 N.E.2d at 154; *Ekco Products Co. v. Cummins,* 5 Ill.2d 307, 316, 125 N.E.2d 526, 531 (1955).

■ The Department of Economic Security relies for its decision almost solely upon the leasehold relationship of the parties. Based upon this record, the commissioner should not have found that relator was a successor under Minn.Stat. § 268.06, subd. 22(a).

Reversed.