316 P.2d 553

In the Matter of the Liability of MARK-HAM'S, Inc., Pocatello, Idaho, for the Payment of Contributions under the Employment Security Law.

No. 8558.

Supreme Court of Idaho.

Oct. 7, 1957.

Milton E. Zener, Laurence S. Bogert, Pocatello, for appellant.

Graydon W. Smith, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for respondent.

**TAYLOR, Justice.**

November 14, 1956, the chief of contributions of the employment security agency made a determination that appellant, Markham's, Inc., was ineligible for a reduced contribution rate for the calendar year 1957. Appellant applied for a redetermination. The issue was apparently referred to the chief of contributions who made the first determination, and he, on December 14, 1956, redetermined that appellant was ineligible for a contribution rate for the year 1957 based on its experience. Appellant then appealed to the industrial accident board. All of the foregoing proceedings were had pursuant to the provisions of § 72–1351(e), I.C. and related provisions of the employment security law.

February 7, 1957, a hearing was had before two members of the board. At this hearing the agency appeared by its counsel and the employer appeared by H. Bruce Markham, its vice president. The agency put in evidence its file in the case. Mr. Markham and Farrell J. Jones, a C.P.A., employed by an accounting firm retained by Markham's, were sworn and testified in behalf of the employer. Thereafter, March 8, 1957, the board entered its order affirming the decision of the agency. The board made no formal or sufficient findings of fact. The recitals in the order are as follows:

"There is no dispute regarding the facts in this case. Due to the fact that unavoidable circumstances caused a change of personnel in its bookkeeping department, and the sequence of events which followed the computation of the company's tax rate and its approval or checking by the company's usual auditing firm, the executives of Markham's, Inc. had no information or notice or knowledge of the fact that its tax report had not been received by the Agency, although such information had been submitted directly to the company by the Agency and its representatives.

"Consequently, as of the cut-off date as defined by Sec. 72–1317 of the Employment Security Law, the company's account was termed delin-

quent as of October 1, 1956 and penalty imposed.

"The plea is for leniency in consideration of extenuating circumstances. Such discretion is beyond the jurisdiction of the Industrial Accident Board, whose authority is limited to the interpretation and application of the Law.

"The Board has no alternative but to affirm the decision rendered by the Chief of Contributions."

It is evident from the foregoing that the board adopted the facts as recited in the report of the agency's field auditor, Davis, in the determination and the redetermination by the chief of contributions, in the application for redetermination and the statement on appeal by Markham's, and in the testimony of Markham and Jones. From this record the facts appear as follows: Markham's had been a covered employer for nine or ten years, during which time its reports and contributions had been made promptly and without delinquency up to the time in question. It had attained a favorable experience rating, which for the year 1956 was 0.3%. It maintained a special bank account in which its tax accruals were deposited weekly. During the years of its operations its quarterly reports and contribution payments had been made by its head bookkeeper. This employee died the latter part of June, 1956, and his duties devolved upon

a comparatively inexperienced assistant. Mr. Jones, of the accounting firm, went over the report for the second quarter, prepared by the new bookkeeper, and after approving it directed the bookkeeper to mail it to the agency. This report was never received by the agency and probably was not in fact mailed. The agency sent two notices of delinquency to Markham's by mail, August 22, 1956, and September 20, 1956. These, Mr. Markham testified, were not called to the attention of the management, although subordinates were under instructions so to do. Field auditor, Mr. Davis, called Markham's by telephone September 13th and September 19th. He was referred to the new bookkeeper, who advised him that he had mailed the report in July. On the occasion of the second call the bookkeeper advised Davis that he had prepared another report and another check. The delinquency came to the attention of Mr. Markham about November 1st. The bookkeeper was discharged, a new report was made and mailed November 6, 1956, which was received by the agency on November 9th.

The contribution due upon the delinquent quarterly report was $81.38, to which was added a delinquency penalty of $3.24. This was also paid.

An employer, eligible for a favorable experience rating, is defined by § 72–1319, I.C. as one who, among other things, "has filed all payroll reports required, has paid,

on or before the cut-off date, all contributions and penalties due". This section further provides:

"For the purposes of this section, delinquencies of a minor nature may be disregarded if showing is made to the satisfaction of the director that such covered employer has acted in good faith and that forfeiture of a reduced contribution rate because of such minor delinquency would be inequitable."

Markham's application for redetermination and its appeal to the board were made upon the basis of its showing of good faith and that the denial of its eligibility was inequitable.

As shown by its order above quoted, the board, deeming its authority to be limited to the interpretation and application of the law, refused to determine the facts and draw its own conclusions as to whether the employer had acted in good faith, whether the delinquency was of a minor nature, and whether the denial of its reduced contribution rate was inequitable. In this the board erred. The provisions governing are as follows:

"* * * A decision of the board in the absence of fraud shall be final and conclusive unless within thirty days after the mailing of notice thereof to his last known address an appeal is filed with the Supreme Court. In any proceedings under this section, the findings of the board as to facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of the court shall be confined to questions of law." § 72-1351(e), I.C.

■ The board is clearly authorized to rehear the entire controversy, to make its own findings of fact and draw its own conclusions, and is not limited to questions of law.

Other provisions governing appeals to the industrial accident board indicate its broad powers to try and determine issues of fact. §§ 72-1332, 72-1358, 72-1361, 72-1368(g), I.C.

■ The board is fundamentally a fact finding body. Its application of the law is incidental to its administrative function. §§ 72-601, 72-604, I.C.; Cook v. Massey, 38 Idaho 264, 220 P. 1088, 35 A.L.R. 200; Pierstorff v. Gray's Auto Shop, 58 Idaho 438, 74 P.2d 171; Stralovich v. Sunshine Min. Co., 68 Idaho 524, 201 P.2d 106; Swan v. Williamson, 74 Idaho 32, 257 P.2d 552. It applies the law to the facts as found by it, not to facts found by some other officer or agency.

■ In this situation there are two rules which govern our disposition of the cause. First: Insofar as the facts before

the board were evidenced by written documents—the case for the agency consisted entirely of its written records—this court is not bound by the findings or conclusions of the board thereon, but will make its own determination from the written record. Phipps v. Boise Street Car Co., 61 Idaho 740, 107 P.2d 148; Mandes v. Employment Security Agency, 74 Idaho 23, 225 P.2d 1049. Second: Where, as here, the evidence is undisputed and without conflict, it becomes a question of law for this court to determine whether such evidence will support the conclusion reached by the board. In re Pacific Nat. Life Assur. Co., 70 Idaho 98, 212 P.2d 397, and cases there cited.

 Here the evidence is quite conclusive that the delinquency was of a minor nature, and the employer acted in good faith. Through a long period of years it had never before been delinquent. It maintained a special account in which tax accruals were deposited currently and in which money was available for the payment of the contributions when due. It acted promptly when its management discovered that its bookkeeper had been found incompetent and untrustworthy. It is equally as apparent that the denial to the employer of the rating it had earned through a period of nine or ten years without previous delinquency would be inequitable. The amount involved was $81.38, exclusive of the statutory penalty. For failure to pay this amount on time, the forfeiture of appellant's previous rating entailed an additional burden for the year 1957 of approximately $2,600.

The agency urges that an adverse decision would reduce its collection efficiency to a shambles. We are not in accord. A case such as this, where the notices and calls from the agency did not get through to the management, will rarely occur without some evidence of a want of good faith. But, assuming that the agency could be confronted with a variety of excuses for delinquency, it has adequate remedies. Section 72–1355 I.C. provides for collection by civil action. Section 72–1354 provides not only the penalty exacted in this case of 1% per month, but that a defaulting employer may be enjoined "from carrying on his business while such default continues."

The order is reversed and the cause is remanded to the board with instructions to enter its order directing the agency to restore to appellant the experience rating to which it would have been entitled had the default not occurred. Costs to appellant.

KEETON, C. J., and PORTER, SMITH and McQUADE, JJ., concur.