535 N.W.2d 372 (1995)
IMPRINT TECHNOLOGIES, INC., Relator,
v.
COMMISSIONER OF ECONOMIC SECURITY, Respondent.
No. C0-95-293.
Court of Appeals of Minnesota.
August 1, 1995.
*374 Don Bedelle Fuller, Minneapolis, for relator.
Kent E. Todd, St. Paul, for respondent.
Considered and Decided by KALITOWSKI, P.J., and RANDALL and HOLTAN,[*] JJ.

OPINION
RANDALL, Judge.

FACTS
U.S. Workforce, Inc. (Workforce) engaged in pad printing, screen printing, spray painting and displays. Workforce filed for Chapter 11 bankruptcy on December 26, 1991. On March 1, 1993, the case was converted to a Chapter 7 bankruptcy. Workforce is listed in the Department's records as going out of business on March 31, 1993. R. Brett Hanson (Hanson) was responsible for making day-to-day management decisions for Workforce.
On February 10, 1993, Imprint Technologies, Inc. (Imprint) filed its articles of incorporation with the Secretary of State's office. On February 22, 1993 Imprint applied for and received assumed names for "Workforce" and other assumed names formerly used by Workforce. Imprint's place of business was across the street from that of Workforce. Imprint hired eight of twelve Workforce employees reported to the Department as having worked for Workforce.
Hanson is the sole director and officer of Imprint. Hanson testified at the first hearing before a reemployment insurance judge that the stock shares for Imprint are held in an irrevocable trust for the benefit of Hanson's wife and children. Hanson is the trustee. Hanson was president of Workforce and was on its board of directors. Although Hanson claimed not to have owned any stock in Workforce, the Department presented a previous disclosure statement in which he states he owned 42% of Workforce stock. The Department also presented evidence from a stock purchase agreement that Hanson's two juvenile daughters were listed as owning together almost 30% of Workforce stock, which made them the majority shareholders. The stock purchase agreement did not list Hanson as a shareholder.
Imprint negotiated with the secured creditor of Workforce, Union Bank and Trust, to purchase equipment and assets of Workforce for approximately $200,000. Union Bank eventually decided not to sell to Imprint, except a small percentage for approximately $3,000 to $4,000. Imprint purchased another printing company, Color Craft Silk Screen Displays, (Color Craft), and used its equipment.
When Hanson's wife filed for reemployment insurance benefits with the Department, a field auditor conducted an audit of Imprint. The field auditor determined that there was substantial evidence that Imprint was a successor employer to Workforce, and that the experience rating record of Workforce should transfer to Imprint. The economic security tax rate for Workforce was 9.1%.
*375 Imprint contested this determination, and after a hearing, the reemployment insurance judge found that Imprint was not a successor employer. The Commissioner ordered review and remanded for a second evidentiary hearing. Although notice of the second hearing was mailed to Imprint's place of business, no representative of Imprint was present. Counsel for Imprint states that he advised his client not to attend the second hearing because its presence would have served no purpose.
At the second hearing, Craig Higdem, a field auditor, presented evidence that Imprint and Workforce shared the same phone number and that they were listed together in the phone book. Higdem presented evidence that Imprint used the name "Workforce" in its marketing, that Imprint had fliers with the name "Workforce" at its place of business, and that Imprint representatives answered the phone using both names: Imprint and "Workforce".
Hanson was listed in disclosure statements to the Department as a shareholder of both companies. Other records showed Hanson's two minor daughters as majority shareholders in Workforce. Higdem testified there was an overlap in the Department's records for when Workforce was in existence and when Imprint came into existence.
Higdem presented evidence that Imprint and Workforce engaged in the same business of pad printing, screen printing, spray painting and displays. He testified that Imprint had attempted to purchase assets and equipment from Workforce's secured creditor, but ended up purchasing Color Craft instead.
The reemployment insurance judge at the second hearing determined that Imprint was a successor employer and the Commissioner's representative adopted these findings. Imprint then filed a petition for writ of certiorari.

ISSUES
1. Is the Commissioner's representative's determination supported by substantial evidence and in accordance with the law that Imprint is a successor employer to Workforce?
2. Are the procedures used by the Department of Economic Security constitutional?
3. Did the Commissioner's representative err in failing to conclude Imprint was a successor employer to Color Craft?

ANALYSIS
On appeal, this court must review the Commissioner's representative's decision, rather than that of the reemployment insurance judge. See Weaver v. Minnesota Valley Lab., 470 N.W.2d 131, 133 (Minn.App. 1991). This court is not bound by the Commissioner's representative's conclusions of law. See Ress v. Abbott Northwestern Hosp., 448 N.W.2d 519, 523 (Minn.1989). The findings of the Commissioner's representative, however, must "be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed." White v. Metropolitan Medical Ctr., 332 N.W.2d 25, 26 (Minn.1983).
This court may affirm the Commissioner's representative's decision or remand for further proceedings, or may reverse or modify the decision if the substantial rights of the relators may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
(a) In violation of constitutional provisions; or
(b) In excess of the statutory authority or jurisdiction of the agency; or
(c) Made upon unlawful procedure; or
(d) Affected by other error of law; or
(e) Unsupported by substantial evidence in view of the entire record as submitted; or
(f) Arbitrary or capricious.
Minn.Stat. § 14.69 (1994); see also Minn. Stat. § 268.12, Subd. 13(4) (1994) stating court of appeals may review decisions of the Commissioner by writ of certiorari.

1. Successor Employer as to Workforce
The Commissioner's representative determined that Imprint was a successor employer of Workforce, and that the experience *376 rating record from Workforce would thus transfer to Imprint.
Minn.Stat. § 268.06, subd. 22(a) (1994) provides:
When an employing unit succeeds to or acquires the organization, trade or business or substantially all the assets of another employing unit which at the time of the acquisition was an employer subject to this law, and continues such organization, trade or business, the experience rating record of the predecessor employer shall be transferred as of the date of acquisition to the successor employer for the purpose of rate determination.
In examining whether an employer is a successor employer under the statute, the courts employ a "two-tiered structure" of analysis. Easy Street West v. Commissioner of Economic Security, 345 N.W.2d 250, 254 (Minn. App.1984).
If one acquires substantially all the assets of a particular business operation, then one reaches the first tier of successorship and can be held jointly liable for contributions due and not paid by one's predecessor. If, in addition, one then continues that same particular business operation, the second tier of successorship is achieved, and one assumes the predecessor's employment experience rating record for purposes of rate determination.
However, since the employment experience rating record determines the level of an employer's future contributions to the unemployment compensation system, transfer of the predecessor's employment experience rating record to the successor is fair and logical only when the essential character of the business is continued so that the employment experience of the successor is likely to be that of its predecessor.
Id. at 254-55 (citations omitted).

Acquisition
Imprint argues that it did not acquire "substantially all the assets of another employing unit" because Workforce was in Chapter 7 bankruptcy, and the property of the estate was under the authority of the U.S. Trustee, and later under the authority of Workforce's secured creditor. Imprint argues, in essence, that a company purchasing assets from another company in bankruptcy can never be a successor purchaser as a matter of law. Imprint argues that is the case, because technically in bankruptcy you do not purchase from the debtor, but instead you purchase from the bankruptcy trustee who is given legal title to sell as part of the Bankruptcy Act. We reject that overly technical reading of the statute.
It would completely wipe out the definition of a successor employer whenever the previous employer was in any section of the Bankruptcy Act. It is not uncommon today that companies file under some section of the Bankruptcy Act, either to stall creditors or totally dissolve the corporation. We cannot read into the statute legislative intent to exclude from a statute designed to protect unemployed workers every single worker employed by a business that purchases from a trustee in bankruptcy. See Mid-America Festivals v. Commissioner of Economic Sec., 349 N.W.2d 270, 273 (Minn.1984) ("application of the successorship statute transcends form and focuses on the substance of the transaction.") To do so would destroy equity among employers.
In addition to the above argument, the Department responds that it did not even proceed under that prong of the statute. Rather, the Department pursued its claim under the language of the statute that Imprint "succeeded to" or "acquired" Workforce's "organization, trade or business." Minn.Stat. § 268.06, subd. 22(a).
Under this language, the factors to examine to determine whether an employer is a successor are:
whether the purported successor purchased, leased or assumed the (1) machinery and manufacturing equipment, (2) office equipment, (3) corporate name, (4) inventories, (5) covenant not to compete, (6) possession of premises, (7) goodwill, (8) work in progress, (9) patent rights, (10) licenses, (11) trademarks, (12) trade names (13) technical data, (14) lists of customers, (15) sales correspondence, (16) books of accounts, and/or (17) employees. *377 Mid-America Festivals v. Commissioner of Economic Sec., 349 N.W.2d at 274 (emphasis added).
In support of its claim, the Department presented evidence at the second hearing that Imprint used the name "Workforce" in the phone book, and that it had listed as its own assumed names "Workforce" and other assumed names formerly used by Workforce. Thus Imprint used the corporate and trade names that Workforce had used. Imprint also had the same phone number listed under the Imprint and Workforce names. The two businesses were located across the street from each other. This evidence supports an inference that Imprint hoped to continue the goodwill and retain the customers of Workforce.
The Department presented evidence that Imprint had on display some fliers from Workforce, and continued to market the "Cantainer" product that was marketed by Workforce. The Department presented evidence that both Workforce and Imprint engaged in the business of pad printing, screen printing, spray painting and displays.[1]
The Department also traced the reported employees from Workforce and found that eight of the twelve reported employees from Workforce were also reported by Imprint. The Department stated that it was unable to verify Hanson's earlier claim that Workforce had thirty employees. Therefore, the Commissioner's representative could properly find that Imprint continued to use most of the employees from Workforce. Further, it was Hanson who made the day-to-day operational decisions for both Workforce and Imprint.
According to the Department's records, Workforce went out of business on March 31, 1993. Imprint's date of incorporation is listed as February 10, 1993. Therefore, there is evidence that Workforce was in existence when Imprint came into existence. Originally, Workforce filed bankruptcy under Chapter 11, and did not convert to Chapter 7 until March 1, 1993.
Hanson is the sole director and officer of Imprint. Hanson testified at the first hearing that the shares for Imprint are held in an irrevocable trust for the benefit of Hanson's wife and children. Hanson is the trustee. Hanson was president of Workforce and was on its board of directors. Although Hanson claimed not to have owned any stock in Workforce, the Department presented a disclosure statement in which he states he owned 42% of Workforce stock. The Department also presented evidence from a stock purchase agreement that Hanson's two juvenile daughters were listed together as owning almost 30% of Workforce stock, which made them the majority shareholders.
Imprint attempted to buy most if not all of the assets of Workforce from Workforce's secured creditor. Although the secured creditor decided not to sell most of these assets, it did sell Imprint assets for approximately $3,000 to $4,000. While this evidence would not support a finding that Imprint acquired "substantially all of the assets" of Workforce, it does tend to show that Imprint attempted to acquire the entire "organization, trade or business," and that while it could not acquire assets from Workforce, it did acquire the organization, trade or business of Workforce in the form of its employees, management, products, and trade names.
The evidence in the record supports the Commissioner's representative's determination that Imprint acquired the "organization, trade or business" of Workforce.

Continuation
Imprint next argues that it did not "continue such organization." First, Imprint's argument that Workforce marketed hard hats and Imprint did not is not persuasive *378 because there is no evidence in the record that Workforce engaged in the marketing of hard hats and "Cantainers" and that Imprint did none of the same business. The only reference in the record to this fact is a letter from Imprint's counsel supported by affidavits. This letter was generated after the second hearing and is inadmissible. The law is clear that matters not received into evidence at the trial may not be considered on appeal. Plowman v. Copeland, Buhl & Co., 261 N.W.2d 581, 583 (Minn.1977).
The Department presented evidence that Imprint continued in much of the same operations of Workforce. The Department presented evidence that Imprint continued in the same business of pad printing, screen printing, spray painting, and displays. The Department's field auditor went on a tour of Imprint and saw that it produced the "Cantainers" that Workforce produced. Imprint used fliers printed with the Workforce name, used the assumed name "Workforce," and other assumed names used by Workforce. Imprint used the same phone number that Workforce had, and listed Workforce alongside Imprint. When the Department's representative called the shared phone number the person answering the call stated Workforce. This evidence supports the Commissioner's representative's determination that Imprint continued the "organization, trade or business" of Workforce.

2. Due Process
Imprint argues the entire administrative process deprived it of property without due process. Challenges to the constitutionality of statutes present questions of law. In re Blilie, 494 N.W.2d 877, 881 (Minn. 1993). The courts will presume statutes are constitutional, and the power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary. See In re Haggerty, 448 N.W.2d 363, 364 (Minn.1989). "The party challenging a statute has the burden of demonstrating beyond a reasonable doubt a violation of some provision of the Minnesota Constitution." Id.
Imprint argues that combining investigative and decision-making functions makes it impossible for employers to receive a fair and impartial tribunal with a neutral and detached judge in the first instance. The U.S. Supreme Court has held, however, that a state administrative agency may combine both investigatory and decision-making functions. Withrow v. Larkin, 421 U.S. 35, 58, 95 S.Ct. 1456, 1470, 43 L.Ed.2d 712 (1975). Therefore, the statutory procedures used by the Department are constitutional.

3. Successor Employer as to Color Craft
Finally, Imprint argues it should have been given the more favorable experience rating of Color Craft, which it argues it acquired and continued. The Commissioner's representative, at oral argument, agreed and indicated Imprint "would likely" receive the more favorable experience rating of Color Craft, but that favorable rating, if obtained, would be merged with the experience rating of Workforce to set a single blended rate. The Commissioner's representative, however, stated that issue was not properly before him at that time. Because the issue was not before the Commissioner's representative, we will not address it on appeal. See Thiele v. Stich, 425 N.W.2d 580, 582 (Minn. 1988) (appellate courts will not entertain arguments made for the first time on appeal). Imprint may raise this issue before the Department, and as indicated in the Commissioner's representative's decision, will likely succeed in merging Color Craft's lower experience rating with Workforce's rating.

DECISION
The Commissioner's representative's determination was supported by substantial evidence and in accordance with the law. Imprint was a successor employer to Workforce. The procedures used by the Department of Economic Security to determine whether a company is a successor employer are constitutional. Because the issue of whether Imprint was a successor corporation to Color Craft was not before the Commissioner's representative, the Commissioner's representative did not err in not deciding *379 this issue. This issue remains open for Imprint to raise again.
Affirmed.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.
[1] The Department argues that Imprint is presenting evidence not in the record. Although the Department does not state specifically what that evidence is, the issue of what type of business the two companies engaged is one such case. Imprint argues that Workforce printed hard hats, and that Imprint does not. There was no evidence in the record relating to hard hats. The only reference to this fact is a letter from Imprint's counsel supported by affidavits. This letter was generated after the second hearing. Because Imprint did not appear at the second hearing, it did not present evidence on this issue.