162 P.3d 765

**SUPER GRADE, INC., Harry Hartung, Employer Account # 00022213834, Employer–Appellant,**

v.

**IDAHO DEPARTMENT OF COMMERCE AND LABOR, Respondent.**

No. 32695.

Supreme Court of Idaho, Moscow, April 2007 Term.

June 27, 2007.

John P. Whelan, P.C., Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Katherine Takasugi argued.

TROUT, Justice.

This appeal arises from a decision by the Industrial Commission, which found that Idaho Code section 72–1351 mandates a partial transfer of Krick Equipment Inc.'s experience rating account to Super Grade Inc. based on a finding that Super Grade, Inc. had succeeded to 74.31 percent of Krick Equipment Inc.'s existing business, and further ordering Super Grade Inc. to assume joint liability for unpaid unemployment insurance taxes.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In February 2001, Robin and Bill Krick formed Krick Equipment, Inc. (KEI) in Sagle, Idaho, a business that engaged in excavation work and grading and road building on a contract basis. Harry Hartung was employed by KEI to do office management and project engineering for approximately two of the three years of KEI's existence as an excavation and road building business. As of March 31, 2004, due to financial difficulties, KEI became solely a leasing company, leasing equipment used in excavating, grading and road building. For the first quarter of 2004, KEI filed its regular disclosure statement with the State of Idaho Department of Commerce and Labor (Department), indicating the number of employees and wage rate. Due to a significant number of unemployment insurance benefit claims, KEI had an experience rating of 3.8 percent of its taxable payroll. Additionally, KEI owed $12,886.65 to the Department for unemployment insurance taxes, penalties and interest.

In March of 2004, Harry Hartung filed Articles of Incorporation for an excavation company called Super Grade, Inc. (SGI) located in Sandpoint, Idaho. At this same time, despite becoming president of SGI, Hartung maintained his full-time job as a construction manager with a company in Spokane, Washington. SGI purchased three items of equipment from KEI and also leased a significant amount of remaining construction equipment from KEI. Bill Krick, the owner of KEI, did project work for SGI in hiring and firing employees and supervising various construction projects. For the second quarter of 2004, SGI filed a disclosure with the Department, indicating virtually the same employees who had been employed the prior quarter by KEI.

When SGI became incorporated, the Department gave it the lowest rating for unemployment purposes, based upon its status as a new business. However, in December 2004, the Department issued a Determination of Unemployment Tax Liability, holding that there was common management and/or control between KEI and SGI and that SGI was a successor of KEI. Consequently, the Department concluded that I.C. § 72–1351 mandated a transfer of KEI's experience rating to SGI, as well as a pro rata portion of the $12,886.65 for past due assessments. SGI appealed this decision to the Department's Appeals Bureau. Appeals Examiner Joyce Shelton (the first examiner) held an initial hearing in May of 2004, at which she listened to testimony from Marilyn Clapp, a tax policy specialist for the Department, as well as from Hartung and Krick. During the hearing, the Department requested the opportunity to submit corrected figures due to a mathematical error in its original determination that resulted in a reduction of SGI's liability.[1] The first examiner held the record open and the Department submitted the corrected figures. SGI then objected to the submission of the figures and in response, the Department requested that the examiner reopen the matter to take further evidence. The hearing was reconvened, although it was then heard by a new appeals examiner (second examiner) because the first examiner was unable to continue with the case. The second examin-

---

1. The Department concluded SGI was partially liable for KEI's outstanding unemployment lia-bility, but it calculated the amount due based on a total, rather than a partial, transfer of liability.

er heard the Department's testimony regarding the recalculation of the partial experience rating transfer and provided SGI the opportunity to cross-examine the Department. The second examiner reviewed the earlier record and then issued his decision, finding that the management and control of KEI had simply shifted to SGI, noting a number of factors indicating continuity in business between the two entities. Therefore, the second examiner affirmed the Department's determination that SGI had succeeded to 74.31 percent of KEI's existing excavation and construction business.

SGI appealed the second examiner's decision to the Industrial Commission (the Commission) claiming SGI had not received a fair hearing due to the substitution of appeals examiners. The Commission found that SGI failed in proving the interests of justice required that a new hearing be held, and after reviewing the record *de novo*, unanimously concurred with the second examiner's decision.[2] SGI now appeals from the Commission's determination.

## II.

### STANDARD OF REVIEW

When reviewing a decision of the Industrial Commission that determined an employer's experience rating, this Court must determine whether the evidence supports the conclusion reached by the Commission. *In re Markham's,* 79 Idaho 307, 312, 316 P.2d 553, 555 (1957). If supported by the evidence, and in the absence of fraud, the Commission's findings shall be conclusive and the jurisdiction of the Court shall be confined to questions of law. *Id.*

Where the rulings of an administrative agency are erroneous, but such erroneous rulings are not necessary to its decision, and they *do not conflict with other rulings* of law or with the decision, such erroneous rulings can be treated as surplusage on appeal and reversal is not required. *Blue Bell Co.*

2. Although the Commission concurred with and adopted the findings of the second examiner, it also rendered its own findings in support of the decision. To the extent there is any discrepancy, we defer to the Commission's findings.

*v. Employment Security Agency,* 75 Idaho 279, 285, 270 P.2d 1054, 1058 (1954).

## III.

### DISCUSSION

**A. Did the Department err in finding that SGI should bear the experience rating and tax assessment of KEI pursuant to I.C. § 72–1351(4)(b)?**

Idaho Code § 72–1351(4)(b), as amended in 2004[3], provides in pertinent part:

> Whenever any individual or type of organization, whether or not a covered employer within the meaning of section 72–1315, Idaho Code, in any manner succeeds to, or acquires, part of the business of an employer who at the time of the acquisition was a covered employer, and such portion of the business is continued by the successor, so much of the separate experience rating account of the predecessor as is attributable to the portion of the business transferred ... shall, upon the joint application of the predecessor and the successor within one hundred eighty (180) days after such acquisition and approval by the director, be transferred to the successor employer for the purpose of determining such successor's liability and taxable wage rate.... The transfer of the predecessor's experience rating account as of the last computation date to the successor shall be mandatory if the management or ownership or control is substantially the same for the successor as for the predecessor and there is a continuity of business activity by the successor.

SGI initially contends that it should not be subject to the experience rating of KEI pursuant to I.C. § 72–1351(4)(b), because its rights were substantially prejudiced by procedural errors below. Additionally, SGI asserts on appeal that that it did not succeed to or acquire any part of KEI and there was no continuity of business activity.

3. In 2005, the statute was amended again and this subpart of the statute is now (5)(b).

### 1. Procedural errors

■ SGI argues that the hearing process was inherently unfair because the second examiner was substituted in after the first examiner took a leave of absence, and this resulted in erroneous factual findings. SGI is concerned that less than 60 pages of the 235 pages of transcribed testimony took place before the second examiner. However, the second examiner reviewed the taped transcript of the prior testimony "in its entirety" before he entered his findings and conclusions. There is nothing about the substitution of a second appeals examiner in itself that is inherently unfair, and SGI presented no evidence below, nor argument on appeal, that it suffered some specific harm due to the substitution of examiners. It simply argues the findings are in error, which will be discussed in more detail below.

■ SGI also contends the Commission abused its discretion by engaging in a de novo review of the record rather than conducting a new hearing. In determining whether the Commission has abused its discretion, this Court employs a three-part test: (1) whether the Commission correctly perceived the issue as one of discretion, (2) whether it acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and (3) whether it reached its decision by an exercise of reason. *Medrano v. Neibaur*, 136 Idaho 767, 769, 40 P.3d 125, 127 (2002); *Cantu v. J.R. Simplot Co.*, 121 Idaho 585, 826 P.2d 1297 (1992). In this case, the Commission correctly perceived this issue as one of discretion. In acting within the outer boundaries of its discretion, the Commission aptly noted that "[d]isagreement with an appeals examiner's decision alone is not a proper basis for a new hearing." (citing *Teevan v. Office of the Attorney General*, 130 Idaho 79, 82, 936 P.2d 1321, 1324 (1997)). Finally, the Commission reached its decision through the exercise of reason. In its decision, the Commission noted that SGI had failed to provide the Commission with any specific reason why SGI

had not received a fair hearing and pointed out that the Commission's method of *de novo* review would require the Commission to review the record below completely as if no decision had previously been made below. Because it was within the Commission's discretion to decide how to handle the matter, we find no error in the decision to review the matter on the record *de novo*.

Additionally on appeal, as part of the challenge to the procedures, SGI challenges a number of particular details in the findings of fact made by the Commission or adopted by the Commission from the examiner's findings. Although this Court agrees there were some errors in the findings of fact, the errors are minor and are not necessary to the ultimate conclusions reached by the Commission. The majority of the findings are supported by the evidence, as discussed further below.

### 2. Evidence to support the findings

■ SGI initially argues that the provisions of I.C. § 72–1351 regarding transfer of an employer's experience rating account apply only when the predecessor and successor employers jointly apply to the Department to have the rating transferred. While the statute does permit employers to submit a joint application, SGI's argument disregards a later portion of the statute, which states that transfer of the experience rating "shall be mandatory" in certain circumstances. Thus, I.C. § 72–1351(4)(b) *requires* the transfer of an employer's experience rating for unemployment purposes to a successor employer "if the management or ownership or control is substantially the same for the successor as for the predecessor and there is a continuity of business activity by the successor." Whether there was substantially the same management, ownership or control [4] between SGI and KEI and whether there was a continuity of business activity are both questions of fact, and thus, this Court's inquiry is limited to whether the Commission's findings are supported by the evidence. *Neihart*, 141 Idaho at 803, 118 P.3d at 135.

---

4. Both parties agree that ownership between the two companies was not the same, and therefore, the focus of the Commission's analysis was on whether the management or control was substantially the same.

In determining whether two businesses have substantially the same ownership, management or control, and whether there is a continuity of business activity, this Court has looked to certain factors, such as whether there was a change in management, supervision, operation, and location. *In re MacKenzie Auto Equipment Co.*, 71 Idaho 362, 368, 232 P.2d 130, 133 (1951). As noted by the Commission in its decision, other states consider similar factors. In order to determine whether a business has been acquired for purposes of unemployment compensation statutes, the Arizona Supreme Court listed certain factors such as continuity of management, ownership, employees and procedures; change of identity; the capacity to continue a similar business; and interruption of the business during the transfer. *Levy v. Arizona Department of Economic Security*, 132 Ariz. 1, 643 P.2d 704 (1982). The Minnesota Court of Appeals has considered such factors as whether the successor purchased, leased or assumed: machinery and manufacturing equipment, office equipment, the corporate name and inventories; whether there was a covenant not to compete; possession of the premises; goodwill; lists of customers; sales correspondence; and whether the employees remained the same. *Imprint Technologies, Inc. v. Commissioner of Economic Security*, 535 N.W.2d 372 (Minn.Ct.App.1995).

█ The Commission evaluated several of the factors listed above in its determination that SGI was a continuation of the business known as KEI. Specifically, the Commission analyzed whether there was a continuity of management and employees. The Commission found that there was, noting that when SGI made its first quarterly report of wages to the Department for the second quarter of 2004 (April—June), the quarterly wage report listed seven employees. Of the seven, six had previously worked for KEI. Marilynn Clapp's testimony indicated that, in interviewing several employees who transferred from KEI to SGI, "the business continued as usual," and "Mr. Krick had continued supervision and oversight of their work." Krick testified that he was hired by SGI through a verbal agreement to act as a consultant. Krick performed substantially the same services he had provided for KEI when it was

engaged in the excavation and road building business. In particular, Krick spent time on SGI projects and occasionally managed them, visited work sites, reviewed plans for feasibility, put together estimates on labor and equipment needed for projects, resolved problems on projects and did some hiring and firing.

There is also evidence to support the Commission's finding that there was a continuity of business activity. SGI performed work for at least two of KEI's clients. Further, SGI purchased three major pieces of equipment from KEI. Despite the absence of any formal lease agreement between KEI and SGI, SGI made more than $25,000 in lease payments to KEI in a five month period. Krick even acknowledged that KEI's "primary contractor" was SGI. Although Krick said that only 40 percent of his leased equipment went to SGI, he refused to disclose any other clients to whom KEI leased equipment.

Finally, the Commission's finding that there was little interruption of the business during the transfer is supported by the evidence. SGI was formed in March, and in April, KEI stopped operating as an excavation company because of financial difficulties. At that point KEI let all of its employees go, with the exception of Krick and his wife, and those employees then went to work for SGI in essentially the same capacity. Although SGI was formed shortly before KEI ceased operations as an excavating business, there is no question KEI was having financial difficulties in March when SGI was formed.

Based on the foregoing, there is evidence to support the Commission's conclusion that the management and control of KEI's excavation and road building business had simply shifted to SGI and that there was a continuity of business activity. Thus, we affirm the Commission's holding that I.C. § 72–1351 requires a transfer of KEI's experience rating account to SGI.

**B. What is the percentage of KEI's business that SGI acquired?**

█ SGI argues that even if SGI acquired part of KEI's business, the Commission improperly calculated the percentage of

that acquisition. According to I.C. § 72–1351(4)(b), when a portion of the business is continued by the successor, the transfer rate is:

"... so much of the separate experience rating account of the predecessor as is attributable to the portion of the business transferred, as determined on a pro rata basis in the same ratio that the wages of covered employees properly allocable to the transferred portion of the business bears to the payroll of the predecessor in the last four (4) completed calendar quarters immediately preceding the date of transfer...."

Marilynn Clapp concluded that SGI acquired 74.31 percent of KEI's roadwork, grading and excavating business. She testified that she arrived at this figure based on the fact that KEI continued after the acquisition as a leasing company retaining only Krick and his wife as employees. Krick and his wife's wages were 25.69 percent of KEI's wage base. SGI did not present any evidence to contradict this testimony. Therefore, the Commission's decision that SGI acquired 74.31 percent of KEI and therefore, SGI should be assessed that pro rata share of the experience rating account together with the amounts currently due from KEI, is supported by the evidence.

**C. Did SGI engage in a good faith attempt to determine the existence of liens against KEI?**

The Department also asserts a claim pursuant to I.C. § 72–1362 for a lien against the equipment SGI purchased from KEI. SGI argues that it bought this equipment in good faith, because it made an effort to ensure that KEI's equipment was unencumbered, and thus, pursuant to I.C. § 72–1362, its purchase should defeat any claim by the State. Idaho Code § 72–1362 states in pertinent part:

Any person ... who acquires the organization, trade or business, or a substantial part of the assets thereof, from a covered employer, shall be liable ... for any contributions or penalties due or accrued and unpaid by such covered employer, and the amount of such liability shall, in addition, be a lien against the property or assets so acquired which shall be prior to all other liens; provided, that the lien shall not be valid against one who acquires from the said predecessor any interest in the said property or assets in good faith, for value and without notice of the lien.

The Department placed liens on KEI's equipment on February 2, 2004 in the amount of $11,627.81 and on May 3, 2004 in the amount of $691.72. SGI purchased equipment from KEI in May and July of 2004. After purchasing the equipment, SGI ran lien searches with the Secretary of State's office on October 20, 2004 and on May 17, 2005. The relevant portion of I.C. § 72–1362 requires that the business acquire the property in good faith. Obviously, as found by the Commission, a good faith lien search must be reasonably diligent and must be conducted prior to purchase of the equipment. When SGI acquired the property, it had not yet conducted a search to see if the equipment was encumbered. Thus, we uphold the Commission's conclusion that SGI was not exempt from the Department's lien claims against the equipment.

### IV.

### CONCLUSION

The evidence supports the Commission's findings that KEI and SGI had substantially the same management and control and that there was a continuity of business activity. Therefore, we affirm the Commission's decision ordering a partial transfer of the experience rating account and unpaid unemployment insurance assessments from KEI to SGI. We award costs on appeal to the Department.

Chief Justice SCHROEDER, and Justices EISMANN, BURDICK and JONES concur.