# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40344-2012

RULE STEEL TANKS, INC., )
       )     **Boise, December 2013 Term**
      **Claimant-Appellant,** )
       )     **2013 Opinion No. 138**
**v.** )
       )     **Filed: December 18, 2013**
**IDAHO DEPARTMENT OF LABOR,** )
       )     **Stephen W. Kenyon, Clerk**
      **Respondent.** )
       )

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Michael R. Christian, Marcus Christian Hardee & Davies, LLP, Boise, argued for appellant.

Cheryl D. George, Deputy Attorney General, Boise argued for respondent.

_____

EISMANN, Justice.

This is an appeal from an order of the Industrial Commission holding that the experience rating account for unemployment tax purposes was transferred from a predecessor employer to a successor employer pursuant to Idaho Code section 72-1351A(1)(a). We affirm the order of the Commission and award attorney fees on appeal to the Department of Labor.

## I.
## Factual Background.

This appeal involves the transfer of the experience rating account for unemployment tax purposes from one employer to another pursuant to Idaho Code section 72-1351A(1)(a). Under the statute, the facts must show: (a) a covered employer; (b) transferred all or a portion of its trade or business to another employer; and (c) at the time of the transfer, there was substantially common ownership, management or control of the two (2) employers. After an investigation,

the Department of Labor on September 19, 2011, issued a determination stating that effective January 1, 2010, the experience rating account of Diamond Z Trailer, Inc. (Diamond Z), which ceased operating in the spring of 2010, was transferred to Rule Steel Tanks, Inc. (Rule Steel), which hired the majority of the employees who were laid off by Diamond Z and which commenced marketing and manufacturing the same product that was manufactured by Diamond Z.

Rule Steel appealed that determination, and pursuant to Idaho Code section 72-1368(4)(a), the appeal was transferred to an appeals examiner. An evidentiary hearing before the appeals examiner was held by telephone on February 2, 2012. The hearing examiner found the relevant facts to be as follows:

1. Rule Steel Inc. is an Idaho corporation formed in 1980 (hereinafter referred to as "Rule").
2. Diamond Z Trailer, Inc. is an Idaho corporation formed in 1988. (hereinafter referred to as "Diamond").
3. Diamond's main business [in] 2008 and 2009 was the production of grinders used in construction.
4. Rule's main business in 2008 and 2009 was the production of steel containers.
5. Starting in 2008, the economic downturn caused Diamond to lose most of its business.
6. In May, 2009, Diamond laid off its remaining 60 employees.
7. In June, 2009, Rule hired 42 of Diamond's laid off employees.
8. Diamond had been leasing fabricating space from Rule. When Diamond laid off its employees, Rule took back the fabricating space. The employees hired from Diamond were housed in that space apparently.
9. In 2008, Steve Peel was the CEO and Secretary of Diamond. Gary Burkhart was the President of Diamond.
10. In 2009, Steve Peel was listed as Secretary for Diamond.
11. In 2009 Steve Peel was listed as the Secretary for Rule. Gary Burkhart was listed as the Treasurer and President for Rule.
12. In 2010, Steve Peel was listed as the Secretary for Rule, and Greg Burkhart was listed as the Treasurer and President.
13. Both Rule and Diamond have their respective logos and hyper-links on the website for each of them.
14. Both Rule and Diamond had the same physical address, 11299 Bass Lane, Caldwell, Idaho.
15. Les Pollard was listed as the HR contact person for both Rule and Diamond.
16. After Diamond ceased operations, Rule began offering grinders as part of its products.

(Citations to the record omitted.)

2

Based upon these findings, the appeals examiner concluded that there was common ownership, management and control of the two corporations and that Diamond Z transferred all of its business to Rule Steel. There was no dispute that Diamond Z was a covered employer. Rule Steel then appealed to the Industrial Commission.

Rule Steel submitted a brief to the Commission in which Rule Steel set forth the issues it disputed. The only material issue challenged by Rule Steel on the appeal to the Commission was that Diamond Z transferred all or a portion of its trade or business to Rule Steel. In the appeal to the Commission, Rule Steel had the burden of proving each issue appealed by clear and convincing evidence. I.C. § 72-1361.

Idaho Code section 72-1351A(5) sets forth a nonexclusive list of factors that may be considered in determining whether there was a transfer of all or a part of a trade or business. Subparts (d) and (e) of that statute state:

> (d) A "transfer of a trade or business" occurs whenever a person in any manner acquires or succeeds to all or a portion of a trade or business. Factors the department may consider when determining whether a transfer of a trade or business has occurred include, but are not limited to, the following:
> (i) Whether the successor continued the business enterprise of the acquired business;
> (ii) Whether the successor purchased, leased or assumed machinery and manufacturing equipment, office equipment, business premises, the business or corporate name, inventories, a covenant not to compete or a list of customers;
> (iii) Continuity of business relationships with third parties such as vendors, suppliers and subcontractors;
> (iv) A transfer of good will;
> (v) A transfer of accounts receivable;
> (vi) Possession and use of the predecessor's sales correspondence; and
> (vii) Whether the employees remained the same.
>
> (e) "Trade or business" includes, but is not limited to, the employer's workforce. The transfer of some or all of an employer's workforce to another employer shall be considered a transfer of a trade or business when, as the result of such transfer, the transferring employer no longer performs trade or business with respect to the transferred workforce, and such trade or business is performed by the employer to whom the workforce is transferred.

With respect to these factors, the Commission found that the facts shown in the record were as follows:

It is undisputed that Rule Steel manufactured the same grinders as Diamond Z. Furthermore, Rule Steel marketed the grinders as "Diamond Z grinders" and sold replacement parts for the grinders. There is no evidence Rule Steel only carried out a portion of Diamond's business. Rather, based on the evidence, it appears that Rule Steel continued Diamond Z's business in its entirety. Since Rule Steel continued to make Diamond Z grinders, Rule Steel continued the business enterprise of Diamond Z.

Additionally, Rule Steel purchased and/or assumed the same business premises, phone number, brand name and some of the same equipment as Diamond Z. As mentioned above, Rule Steel retained and continued to manufacture grinders using the Diamond Z name. After Diamond Z dissolved, Rule Steel moved into the same building as Diamond Z. In additional to having the same address, Rule Steel also uses the same phone number. Rule Steel purchased some of Diamond Z's equipment from Diamond Z's creditor.

The record also contains evidence that Rule Steel acquired Diamond Z's good will and there was a continuity of business relationships. Rule Steel kept the "Diamond Z" name for the grinders because it had value in the market place. Therefore, Rule Steel retained the name and placed it on the grinders it manufactures. Employer did not dispute these points. Diamond Z's good will was transferred and was used by Rule Steel. Additionally, Rule Steel has contracts with some of the same dealers as did Diamond Z. There was also a continuity of business relationships. Rule Steel used some of the same dealers as Diamond Z and there is evidence that both employers used the same vendors.

Lastly, Rule Steel acquired 44 of the 60 former Diamond Z employees. This represents 73% of Diamond Z's workforce. Diamond Z laid off its remaining workforce at the end of May 2009. Rule Steel's president, Gregory Burkhart, stated that it hired 30 of those workers in June of 2009. Another twelve (12) were hired in the rest of the third quarter 2009 and the last two (2) were hired in the fourth quarter of 2009. Therefore, shortly after the dissolution of Diamond Z, Rule Steel acquired the majority of the Diamond Z workforce.

(Citations to the record omitted.)

The Commission held that "based on the evidence regarding all of the factors, there is sufficient evidence to find that Diamond Z transferred its business to Rule Steel. Employer has not established by clear and convincing evidence that it does not satisfy the factors." Rule Steel then appealed to this Court.

## II.
### Did the Commission Err in Finding that Rule Steel Had Failed To Prove by Clear and Convincing Evidence that the Decision of the Appeals Examiner Was Erroneous?

4

A final decision of the Industrial Commission under the Employment Security Law is appealable to this Court. Idaho Const. art V, § 9; I.C. § 72-1368(9); I.A.R. 11(d). On such appeals, our review is limited to questions of law, which include whether the Commission's factual findings are supported by substantial and competent evidence and the application of the facts to the law. *Stark v. Assisted Living Concepts, Inc.*, 152 Idaho 506, 508, 272 P.3d 478, 480 (2012). Because Idaho Code section 72-1351A(5) sets forth a nonexclusive list of factors that may be considered in determining whether there was a transfer of all or part of a trade or business, the relative weight to be accorded each of the factors considered is within the discretion of the Commission. *See Moore v. Moore*, 152 Idaho 245, 249, 269 P.3d 802, 806 (2011).

The factors that Rule Steel addresses will be discussed separately.

**(a) Whether the successor continued the business enterprise of the acquired business.** Rule Steel argues, "Diamond Z sold its last grinder in March 2009" and "Rule Steel did not sell a grinder until February 2010." Manufacturing the grinders was the sole business of Diamond Z. The Commission found that the market for Diamond Z's custom grinders declined due to the economic downturn, that as a result Diamond Z ceased operations in the spring of 2009, that it laid off its work force and its assets were seized by creditors, and that the corporation dissolved in December 2009. The Commission also found that Rule Steel had the capability to manufacture the grinders before February 2010, that it began manufacturing the same grinders as soon as there was a market for the grinders, that Rule Steel marketed the grinders as "Diamond Z" grinders, and that it sold replacement parts for the Diamond Z grinders.

The Commission was aware of the lapse in time between when Diamond Z sold its last grinder and when Rule Steel began selling Diamond Z grinders. In its discussion of the facts, the Commission stated, "Mr. Peel acknowledged that Rule Steel had the capabilities to manufacture the grinders prior to February 2010, but did not do so because there was no market" and "As soon as there was a market for the grinders, Rule Steel . . . began manufacturing the same custom grinders that Diamond Z had previously manufactured." The Commission was aware of the time lapse, but found that it was due solely to market conditions. That is supported not only by the quoted findings, but also by Mr. Peel's testimony that Rule Steel hired four men from Diamond Z whose primary duties for Rule Steel were marketing Diamond Z grinders.

**(b) Whether the successor purchased, leased or assumed machinery and manufacturing equipment, office equipment, business premises, the business or corporate**

5

**name, inventories, a covenant not to compete or a list of customers.** The Commission found that Diamond Z's assets were seized by creditors and that "Rule Steel purchased some of Diamond Z's assets from a creditor." The evidence showed that for the sum of $642,036.00, Rule Steel purchased machinery, manufacturing equipment, and office equipment that had belonged to and been used by Diamond Z in its business. Rule Steel argues on appeal, "While Rule acquired former Diamond Z assets, it did so from a third party rather than directly from Diamond Z, and the undisputed testimony was that the assets were put to use in Rule's existing business operations." The statute does not require that the assets be purchased directly from the predecessor employer. The Commission considered how Rule Steel acquired the assets from Diamond Z, and the weight, if any, that should be given to the fact that Rule Steel acquired the assets from one of Diamond Z's creditors was for the Commission to decide.

Rule Steel also argued, "The physical assets acquired from Diamond Z were put to use by Rule in its existing business lines." Mr. Peel did testify that "the bulk of the assets" acquired from the creditor were assets that were common in any application and "[t]hey were put into play for much of Rule Steel's other businesses." This statutory factor does not require that all of the assets acquired be used solely to produce the products manufactured by the predecessor employer. Considering the significant decrease in the demand for grinders, it is not surprising that the equipment that Rule Steel devotes to manufacturing Diamond Z grinders is less than was used by Diamond Z prior to the economic downturn.

**(c) Continuity of business relationships with third parties such as vendors, suppliers and subcontractors.** There is no dispute that Diamond Z terminated its contracts with its dealers, and Rule Steel contracted with two of those dealers in 2010. The Commission found that "Rule Steel has contracts with some of the same dealers as did Diamond Z." On appeal, Rule Steel simply points out the fact that it did not contract with all of Diamond Z's dealers. This was just one factor to be considered, and the Commission was entitled to give it whatever weight it desired.

**(d) A transfer of good will.** The Commission found that "Rule Steel acquired Diamond Z's good will" and "Rule Steel kept the 'Diamond Z' name for the grinders because it had value in the market place." An employee of the Department of Labor testified that Mr. Peel had told her that "he negotiated a deal in the foreclosure of Diamond Z to keep the Diamond Z logo, because it had value in the marketplace." Rule Steel did not dispute that.

6

**(e)  A transfer of accounts receivable.**  The Commission found that "[t]he record is scant regarding a transfer of accounts receivable."  Rule Steel points out that lack of evidence on appeal.  However, this is simply one factor to consider.  The statute does not require that all factors exist.

**(f) Possession and use of the predecessor's sales correspondence.**  The Commission also found that the record is scant regarding the  possession  or  use  of  Diamond  Z's  sales correspondence.  Again, Rule Steel points out the lack of evidence as to this factor, but it is only one factor to consider and is not controlling.

**(g) Whether the employees remained the same.**  The Commission found that Rule Steel hired 44 of the 60 former Diamond Z employees, representing 73% of Diamond Z's workforce that was laid off at the end of May 2009.  The Commission found:  "Rule Steel's president, Gregory Burkhart, stated that it hired 30 of those workers in June of 2009.  Another twelve (12) were hired in the rest of the third quarter 2009 and the last two (2) were hired in the fourth quarter of 2009."

Rule Steel argues, "Of the 44 workers hired by Rule, all but four were retrained and put to work in Rule Steel's existing business, although another six eventually worked part-time as a secondary duty when Rule began building grinders several months later."  It also argues that Rule Steel only hired one of Diamond Z's managers, and "he split his time between Rule and Diamond Z work."

Because of the market conditions, Rule Steel obviously did not need the number of employees who had previously worked for Diamond Z in order to continue manufacturing the Diamond Z grinders.  The issue is whether Diamond Z's business was transferred to Rule Steel, not whether Rule Steel would be able to manufacture and sell grinders in the same quantity as did Diamond Z before there was the significant decline in the market for the grinders.

After a de novo review of the record, the Commission concluded that Rule Steel "has not shown by clear and convincing evidence that Diamond Z did not transfer its trade or business to Rule Steel."  The Commission stated:  "Based on the entirety of the record in this matter, Diamond Z's business was subsumed by Rule Steel.  The only significant change was that the operation now operates under the name Rule Steel."  Rule Steel has not shown that the Commission's factual findings are unsupported by substantial and competent evidence or that the Commission misapplied the facts to the law.  It has not shown that the Commission erred in

7

concluding that Rule Steel did not show by clear and convincing evidence that Diamond Z did not transfer its trade or business to Rule Steel.

### III.
### Did the Commission Err by Failing to Order a Partial Transfer of Diamond Z's Experience Rating Account Pursuant to Idaho Code section 72-1351(5)(b)?

Rule Steel argued in its brief to the Commission that if there was a transfer of Diamond Z's business to Rule Steel, the appeals examiner erred by failing to require the reduction of the experience rating transfer pro rata pursuant to Idaho Code section 72-1351(5)(b).[1] That statute applies when an individual or organization "in any manner succeeds to, or acquires, *part of the business of an employer* who at the time of acquisition was a covered employer, and *such portion of the business* is continued by the successor." (Emphasis added.) In this case, Rule Steel succeeded to all of the business of Diamond Z, not merely part of its business. The only business Diamond Z had at the time of the transfer was manufacturing the grinders.

Rule Steel argues that the statute should be read to apply when the successor employer hires only a part of the predecessor employer's employees. According to Rule Steel, "part of the business" should be read to mean "part of the employees." Rule Steel makes a good policy argument that when an employer that manufactures many different products assumes the business of a much smaller business, the experience rating account of the predecessor employer should only apply to employees of the successor business who are engaged in manufacturing the products of the predecessor employer. However, that is not what the statute says. As we held in *Super Grade, Inc. v. Idaho Dept. of Commerce and Labor*, 144 Idaho 386, 162 P.3d 765 (2007),

---

[1] That statute provides:

> Whenever any individual or type of organization, whether or not a covered employer within the meaning of section 72-1315, Idaho Code, in any manner succeeds to, or acquires, part of the business of an employer who at the time of acquisition was a covered employer, and such portion of the business is continued by the successor, so much of the separate experience rating account of the predecessor as is attributable to the portion of the business transferred, as determined on a pro rata basis in the same ratio that the wages of covered employees properly allocable to the transferred portion of the business bears to the payroll of the predecessor in the last four (4) completed calendar quarters immediately preceding the date of transfer, shall, upon the joint application of the predecessor and the successor within one hundred eighty (180) days after such acquisition and approval by the director, be transferred to the successor employer for the purpose of determining such successor's liability and taxable wage rate and any successor who was not an employer on the date of acquisition shall as of such date become a covered employer as defined in this chapter. Such one hundred eighty (180) day period may be extended at the discretion of the director.

the statute applies "when a portion of the business is continued by the successor." *Id*. at 392, 162 P.3d at 771. In *Super Grade*, the predecessor employer named Krick Equipment, Inc., was engaged in excavation work and grading and road building on a contract business. *Id*. at 388, 162 P.3d at 767. In March of 2004, it became solely a leasing company, leasing equipment used in excavating, grading, and road building. *Id*. In the same month, an employee of Krick Equipment formed an excavation company named Super Grade, Inc., which purchased three items of equipment from Krick Equipment and leased from it a significant amount of remaining construction equipment. *Id*. The Department of Commerce and Labor determined that Super Grade was a successor employer of Krick Equipment. *Id*. Because Krick Equipment continued as a leasing company, it did not transfer its entire business to Super Grade. *Id*. at 392, 162 P.3d at 771. In the instant case, Diamond Z had only one business, manufacturing the grinders, and it did not continue in business. The corporation was dissolved. Therefore, Idaho Code section 72-1351(5)(b) did not apply.

## IV.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Both parties seek an award of attorney fees on appeal pursuant to Idaho Code section 12-117. Under subsection (1) of that statute, upon appeal from any administrative proceeding involving as adverse parties a state agency and a person, which term includes a corporation, the court "shall award the prevailing party reasonable attorney's fees . . . if it finds that the nonprevailing party acted without a reasonable basis in fact or law." Because Rule Steel is not the prevailing party on appeal, it is not entitled to an award of attorney fees under that statute. The Department of Labor is the prevailing party on appeal, and we find that it is entitled to an award of attorney fees under the statute. Rule Steel did not challenge any of the material facts in this case. It only challenged the weight given by the Commission to the various factors set forth in Idaho Code section 72-1351A(5). Rule Steel was required to establish by clear and convincing evidence that it was not the successor employer of Diamond Z under that statute, and it did not even come close to doing so. It has simply asked us to reweigh the factors on appeal, which is something we are not permitted to do. With respect to Idaho Code section 72-1351(5)(b), Rule Steel simply argued for a reading of the statute that is both contrary to its

9

express wording and to our prior decision in *Super Grade*. Therefore, we award the Department of Labor reasonable attorney fees on appeal.

**V.**
**Conclusion.**

We affirm the order of the Industrial Commission, and we award respondent costs and reasonable attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, HORTON and J. Pro Tem SCHROEDER **CONCUR.**