**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 42220-2014**

| | | |
|---|---|---|
| GINA A. POLEDNA, | ) | |
| | ) | **Coeur d'Alene, April 2015 Term** |
| Claimant-Appellant, | ) | |
| | ) | **2015 Opinion No. 41** |
| v. | ) | |
| | ) | **Filed: April 23, 2015** |
| IDAHO DEPARTMENT OF LABOR, | ) | |
| Respondent, | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| and | ) | |
| | ) | |
| THORNE RESEARCH, INC., Employer. | ) | |
| | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Mark B. Jones, Sandpoint, Idaho, argued for appellant.

Tracey K. Rolfsen, Deputy Attorney General, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal from the Industrial Commission from an order denying appellant unemployment benefits after she quit her job because it was aggravating her bilateral carpal tunnel syndrome. We affirm the order of the Commission that the appellant had failed to prove that she quit her employment for good cause.

**I.**
**Factual Background.**

Gina Poledna (Claimant) was employed by Thorne Research, Inc. (Employer), beginning on May 20, 2002. Her work required repetitive tasks, and over time she began experiencing pain in her wrists. She saw a physician on May 7, 2007, who diagnosed her as having ganglion cysts

in both wrists. Her physician stated that Claimant could return to work and recommended that she wear a brace. The physician next saw Claimant on June 11, 2007, and noted that her pain "fairly well quieted down" and that she has "slight discomfort with excessive twisting . . . otherwise she can do what she wants."

Claimant's wrist pain worsened, and she returned to her physician on November 22, 2013. Her physician ordered x-rays and nerve conduction tests. On December 13, 2013, Claimant met with her physician, who informed her that she had bilateral carpal tunnel syndrome and that her work causes the pain to get worse. After receiving that diagnosis, Claimant met with Employer and requested other work duties that did not require the repetitive motion of her current job. Employer told her that no other type of work was available.

Claimant decided that she would quit her employment. She went on vacation on Thursday, December 19, 2013, and on December 30, 2013, she gave Employer a clinic note from her physician. It stated the diagnosis of bilateral carpal tunnel syndrome and a plan for the future, which was as follows:

> We discussed options including carpal tunnel release, continuing with her symptomology and living with the pain, or trying a change in activities. I explained to her I do think that because she feels her pain is made worse while at work, then she is clearly having pain related to work. I explained I am dubious that her insurance carrier at work is likely to find this to be completely associated with work as the only cause. Her question was pretty straight forward, which was: Does work cause her pain to get worse and does it cause her harm? I believe the answer is yes. She will consider her options. She will contact me if she has any further questions.

Employer told Claimant that there were no light duty positions available. Claimant decided not to return to work with Employer, so her last day of employment was December 18, 2013.

Claimant filed a claim for unemployment benefits, which was denied. She appealed to an appeals examiner, who held a de novo hearing by telephone on March 13, 2014. Prior to the hearing, Claimant's physician submitted to the Department of Labor a medical report dated February 14, 2014. In that report, Claimant's physician stated that he did not advise Claimant to "[t]ake time off from work," to "[c]hange occupations," to "[m]ove to another area," or to "[d]iscontinue working." He further stated that the only limitation of which he advised her regarding the kind, amount, conditions, or place of her work was that she was to wear a brace at

work. Finally, he stated that Claimant can work full time. During the hearing, Claimant admitted that her physician never told her that she needed to quit her job.

On March 14, 2014, the appeals examiner issued a decision denying Claimant unemployment benefits because "there is no evidence in the record to suggest her medical condition made work impossible," which Claimant was required to prove in order to establish that she quit work with good cause connected to her employment. IDAPA 09.01.30.450.05.

On March 19, 2014, Claimant filed a motion to reopen the hearing in order to submit a three-page document stating Claimant's job description. The appeals examiner denied the request because the job description was not new evidence that was unavailable on the date of the hearing; the only medical evidence in the record was provided by Claimant's physician who did not recommend that Claimant take time off work, change occupations, or discontinue working; and the job description would be insufficient to overcome the physician's opinion.

On March 24, 2014, Claimant filed an appeal to the Industrial Commission. It heard the matter de novo based upon the record before the appeals examiner. The Commission upheld the appeals examiner's decision not to reopen the hearing, and it concluded that Claimant voluntarily quit her job without good cause because she failed to prove that her job was unsuitable due to her medical condition. The Commission found that the medical records from Claimant's treating physician were more credible than Claimant's assertions. Claimant then appealed to this Court.

**II.**
**Did the Commission Err in Holding that Claimant Failed to Prove that She Quit Her Employment for Good Cause?**

Upon an appeal from a final decision of the Industrial Commission under the Employment Security Law, "our review is limited to questions of law, which include whether the Commission's factual findings are supported by substantial and competent evidence and the application of the facts to the law." *Rule Steel Tanks, Inc. v. Idaho Dept. of Labor*, 155 Idaho 812, 816, 317 P.3d 709, 713 (2013). Claimant contends that there was insufficient evidence supporting the Commission's decision because evidence is lacking regarding "(1.) The job performed by Poledna, (2.) The physical requirement necessary to perform Poledna's job, (3.) The manipulative requirements necessary to perform Poledna's job." Claimant argues, "Lacking

3

this basic knowledge, how could the Examiner/Commission determine Poledna quit without 'good cause?' "

A claimant is not eligible for unemployment benefits if the claimant left his or her employment voluntarily without good cause. I.C. § 72-1366(5). The claimant has the burden of proving that he or she left the employment with good cause in connection with the employment. IDAPA 09.01.30.450.01. In this case, Claimant contends that she left her employment due to her health or physical condition. Therefore, she had the burden of proving that her health or physical condition made it impossible to continue to perform the duties of her job. IDAPA 09.01.30.450.05.

During the hearing, the appeals examiner asked Claimant what her job duties were. Claimant answered:

> There is [sic] various areas in the production process there at Thornes. When—in December I was working mainly in the labeling area. I had worked in the bottling area. I had pretty much worked throughout the whole company. You set up various machines and ran them, did cleaning, things like that. In the labeling process you were putting labels on the products and, then, boxing them and palletizing them.

Claimant had the burden of proving that she quit her job with good cause in connection with her employment. If additional or more detailed information regarding the precise physical requirements of Claimant's job was relevant to her claim that she had good cause to quit, it was her obligation to present that evidence. Her failure to present evidence that she contends would have satisfied her burden of proof does not show that there was insufficient evidence for the Commission to conclude that she failed to satisfy her burden of proof. *Uhl v. Ballard Medical Products, Inc.*, 138 Idaho 653, 658, 67 P.3d 1265, 1270 (2003).

Claimant also argues that she had a documented medical condition that was made worse by her employment, and therefore she established that her health or physical condition made it impossible to continue to perform the duties of her job. Claimant's treating physician stated that he did not advise Claimant to take time off from work, to change occupations, or to discontinue working. He also stated that she could work full time and that the only limitation of which he advised her was to wear a brace at work. The Commission found that the medical records from Claimant's treating physician are more credible than Claimant's assertions. "We will not disturb the Industrial Commission's conclusions regarding the credibility and weight of evidence unless

4

the conclusions are clearly erroneous." *Id*. at 657, 67 P.3d at 1269.  We do not re-weigh the evidence or consider whether we would have reached a different conclusion from the evidence presented. *Id*.  We "review questions of fact only to determine whether the Commission's findings are supported by substantial and competent evidence." *Id.*  The Commission considered the evidence in the record and determined that the medical evidence presented did not establish that Claimant's health or physical condition made it impossible for her to continue to perform the duties of her job.

The Commission did not err in concluding that Claimant had failed to prove that she left her employment for good cause.  Therefore, we affirm the order of the Commission that Claimant voluntarily quit her job without good cause connected with her employment.

## III.
### Is Claimant Entitled to an Award of Attorney Fees on Appeal?

Claimant requests "an award of any costs and attorney fees that may be awarded under Idaho Law."  Because claimant has not supported her request with any authority or argument, we will not address it.  *Bream v. Benscoter*, 139 Idaho 364, 370, 79 P.3d 723, 729 (2003).

## IV.
### Conclusion.

We affirm the order of the Industrial Commission, and we award respondents costs on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**